GEORGE B. BEACH, Respondent, *v.* EMMA JENKINS, Appellant.

Fourth Department, May 24, 1916.

Real property — restrictive covenants setting back building line and prohibiting erection of stables within certain area — when restrictive covenant is imposed for benefit of other grantees — building scheme of original grantor — restrictive covenant construed — variance as to building line restriction in different deeds — notice of restrictive covenants — "front line" of premises bounded by three streets — constructive notice of restrictive covenant — when erection of garage violation of restriction against erection of barn or stable.

Where an owner of a large tract of land divides it into building lots which he sells to numerous grantees and the deeds provide that the grantee, his heirs, assigns and licensees shall never sell intoxicating liquors or erect any building thereon less than two stories high, or less than fifteen feet from the front line of the premises, or use the premises for any purpose which shall render adjacent premises undesirable for residence, and the grantee for himself and his heirs and assigns covenants that they will observe the restrictions and that no stable shall be erected on the premises within fifty feet of a certain avenue, the restrictive provisions may be regarded as in the nature of restrictive covenants.

As the plan of the original owner was a building scheme and as he proposed to sell to different purchasers for separate occupancy, and as the deeds contained uniform restrictive covenants, they will be held not to be binding solely between the original grantor and his various grantees, but to have been imposed for the benefit and protection of the grantees and to be enforcible as between them.

The latter construction is indicated by the fact that the covenants prohibited acts "which shall render adjacent premises undesirable for residence," the word "adjacent" meaning not only contiguous lots but neighboring lots comprising the lands conveyed to the various grantees.

Where the plaintiff's deed prohibited the construction of buildings within twenty feet of the street line, which restriction was imposed upon the far greater number of grantees, while the deed of the defendant's predecessor prohibited a building less than fifteen feet "from the front line" of the premises, which was also the case in a comparatively small proportion of the deeds, it cannot be contended that there was no general scheme to set back the buildings twenty feet, and where the defendant is the only person who has exceeded the twenty-foot restriction by building a garage within the prohibited area, she may be enjoined from maintaining the same where it is admitted that the structure was built with full knowledge of the restrictive covenants inuring to the benefit of other grantees.

Where a restrictive covenant is clearly for the benefit of adjoining grantees, equity will afford them relief where an owner violates the restriction, although there is neither privity of estate nor privity of contract between them.

It is immaterial that the plaintiff's premises were conveyed to his predecessor before the conveyance to the predecessor of the defendant, where the restrictions in the deed of the defendant's predecessor were made for the benefit of the plaintiff's premises.

Although the deed to the defendant contained no restrictive covenant, she is charged with notice of restrictions contained in the deed to her grantor.

Where a vacant lot conveyed is bounded on three sides by different streets, they may all be considered as "the front line of the premises," especially where such construction will uphold a residential scheme.

Even though the term "front line" as used in the defendant's deed may be ambiguous if the buildings were uniformly set back at least twenty feet on a certain street, it was sufficient to put the defendant upon inquiry, and as a result thereof she was bound to take notice of the open space existing on said street so that she was bound to conform to the restriction.

The construction of a garage is a violation of a covenant not to build a barn or stable, for a garage is a stable for motor cars.

APPEAL by the defendant, Emma Jenkins, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Onondaga on the 30th day

of September, 1915, upon the decision of the court after a trial at the Onondaga Special Term.

*Charles A. Hitchcock,* for the appellant.

*John F. Nash,* for the respondent.

Judgment affirmed, with costs, upon the opinion of DE ANGELIS, J., delivered at Special Term.

All concurred; DE ANGELIS, J., not sitting.

The following is the opinion delivered at Special Term:

DE ANGELIS, J.:

The plaintiff seeks an injunction requiring the defendant to remove her garage from its present location on the defendant's land and perpetually restraining the defendant from constructing or maintaining a garage in that location, on the ground that the defendant, by reason of a negative or restrictive covenant, or the equivalent thereof, is forbidden to have or maintain a garage in its present location.

The defendant contends that she is subject to no such restriction and has a right to maintain the garage where it is.

The defendant owns two adjoining lots in Syracuse bounded northerly by Tallman street and Onondaga avenue, easterly by Coolidge avenue and southerly and westerly by plaintiff's lot and Onondaga avenue.

The original deed of defendant's lots was executed by Manning C. Palmer and wife and Alva Palmer and wife to Arthur Jenkins, was dated July 29, 1896, recorded August 3, 1896, and the lots were described therein as follows: "All that tract or parcel of land situate in the City of Syracuse, Onondaga County, New York, known as Lots Nos One and Two (1 & 2) of Block No. Three Hundred Thirty-five (335) of the Palmer Tract in said city according to an amended map of said Tract made by Clarke, Meacher & Allen C. E. and filed in the Onondaga County Clerk's office on the 22nd day of December, 1891, said lots being described as follows: Beginning at a point in the west line of Coolidge Avenue, one hundred twenty-six and 90-100 (126.90) feet southerly of the intersection of said west line of Coolidge Avenue with the south line of Tallman Street.

Thence northerly along the west line of Coolidge Avenue one hundred and twenty-six and 90-100 feet to the intersection of the west line of Coolidge Avenue with the south line of Tallman Street. Thence along the south line of Tallman St. sixty (60) feet to the northwest corner of lot No. One aforesaid; Thence along the south line of Tallman St. in a line curving towards Onondaga Avenue, eighty-four & 60-100 (84 60-100) feet to the northwest corner of lot No. Two aforesaid; Thence southeasterly along the southwest side of lot No. Two one hundred twenty-nine & 6-10 (129.6) feet to a point one hundred twenty-one & 68-100 (121.68) feet south of the northwest corner of said lot No. One; Thence easterly to the place of beginning."

This deed contains the following provision: "Provided, nevertheless, and the grant hereby made is subject to the following restrictions and conditions, viz., That the said grantee his heirs, assigns and licensees shall never sell any intoxicating liquors on said premises, or any part thereof, or erect any building thereon less than two stories high or without a stone foundation, or less than fifteen feet from the front line of said premises, or use said premises for manufacturing, trade or other purposes, which shall render adjacent premises undesirable for residence; and the grantee for himself and his heirs and assigns covenant that they will observe the said restrictions and conditions; and further that no barn or stable shall be erected on said premises within (50) Fifty Feet of Coolidge Avenue."

Arthur Jenkins deeded these lots to his wife, the defendant, by quitclaim deed dated December 28, 1900, which deed was recorded December 28, 1900, and contained no restrictions whatever and no reference to the deed from the Palmers to Arthur Jenkins.

The plaintiff owns a lot adjoining the defendant's two lots bounded northerly by defendant's lots, easterly by Coolidge avenue, southerly by the lot of one Mary A. Snow, and westerly by Onondaga avenue.

The original deed of plaintiff's lot given by the Palmers to Anna E. Gray, was dated July 13, 1895, and recorded September 14, 1895. It conveyed lot No. 3 in block 335, and referred to the Palmer map in the same manner as the same

was referred to in the deed of the defendant's lots from the Palmers, and contained this restrictive provision: "Provided, nevertheless, and the grant hereby made is subject to the following restrictions and conditions, viz.: that the said grantee, her heirs, assigns and licensees shall never sell any intoxicating liquors on said premises, or any part thereof, or erect any building thereon less than two stories high or without a stone foundation, or less than twenty feet from the front line of said premises on either street, or use said premises for manufacturing, trade or other purposes, which shall render adjacent premises undesirable for residence; and upon the further condition that no barn shall be erected upon said premises within fifty feet of Coolidge Avenue."

The plaintiff holds this lot through two mesne conveyances with the same restrictions from Anna E. Gray.

This figure represents the location of the plaintiff's and defendant's lots with the measurements thereof and the location of the defendant's house and garage. (See Map, Exhibit 2.)

It is admitted in the pleadings that in the year 1891 and prior thereto, Manning C. Palmer and Alva W. Palmer were the owners in fee of a certain large tract of land situated in the westerly part of the city of Syracuse, located at and near the junction of Onondaga avenue and Tallman street, known as the Palmer tract, and that Manning C. Palmer and Alva W. Palmer caused this tract to be laid out and divided into building lots for the purpose of sale and caused maps of the same so divided and laid out to be filed in the office of the clerk of Onondaga county, which maps are now on file in that office in book No. 4 of maps as No. 628 and in book No. 5 of maps as No. 714.

The pleadings further admit that the Palmer tract was at the time the maps were made and still is situated in and near and forms a part of a high-grade residential section of the city where there were then existing and in process and contemplation of erection valuable high-grade dwelling houses, and that that section and vicinity have ever since continued to increase in value for residential purposes, many high-grade dwelling houses having been erected upon lots of the tract along the

various streets intersecting and bounding the tract and near or adjoining the property of the plaintiff and defendant.

The pleadings further admit that the Palmers, after making and filing the maps and before and after the purchase by the plaintiff and defendant of their lots, sold a number of lots on Onondaga avenue, Tallman street and Coolidge avenue.

The evidence does not definitely disclose the extent of the Palmer tract, but one of the maps introduced in evidence shows the tract to be in the form nearly of a parallelogram about 1,900 feet in length and about 900 feet in width, the longer way being north and south. It is bounded on the north by Tallman street, on the east by Rich street, on the south by Cheney street and on the west by Onondaga avenue. There are two streets between Rich street and Onondaga avenue substantially parallel thereto and extending the whole length of the tract, to wit, Palmer avenue and Coolidge avenue. There are two streets between Tallman street and Cheney street and parallel thereto which run clear across the tract, to wit, Bellevue avenue and Solvay street. This map shows that the tract was divided into ten blocks, to wit, Nos. 335, 336, 337, 338, 340, 341, 342, 343, 344 and 345 and about 250 lots averaging about 40 feet in width and 120 feet in depth. Residences have been built on about 200 lots, and there is no business place, boarding house, saloon or the like on the tract.

There is no proof that there is any building within twenty feet of any street line in the tract except the garage in question.

As already appears, plaintiff's lot is No. 3 and defendant's lots are Nos. 1 and 2 in block No. 335 of the Palmer tract. This block is bounded northerly by Onondaga avenue and Tallman street, easterly by Coolidge avenue, southerly by Bellevue avenue, and westerly by Onondaga avenue. Block No. 336, the block in the tract next easterly, is bounded northerly by Tallman street, easterly by Palmer avenue, southerly by Bellevue avenue, and westerly by Coolidge avenue, so that Coolidge avenue separates the two blocks.

It is undisputed that the buildings on both sides of Coolidge avenue in this territory are uniformly twenty feet back from the street lines on both sides, with the sole exception of the garage in question. The situation includes the four corner

lots which, according to defendant's contention, do not appear to front on Coolidge avenue. Every lot except the plaintiff's is built upon.

On the 29th day of July, 1896, when the Palmers deeded lots Nos. 1 and 2 to Arthur Jenkins, lots Nos. 3, 4, 5, 6, 8 and 14 in block No. 335 on the westerly side of Coolidge avenue, and lots Nos. 6, 11, 13, 17, 21 and 25 in block No. 336 on the easterly side of Coolidge avenue, had been sold and conveyed by the Palmers. On the 28th day of December, 1900, when the defendant acquired title to lots Nos. 1 and 2 from her husband, lots Nos. 9, 10, 11 and 12 in block No. 335 on the westerly side of Coolidge avenue, and lots Nos. 1 and 15 in block No. 336 on the easterly side of Coolidge avenue, had also been sold and conveyed by the Palmers.

The restrictive provisions in the conveyances of these lots from the Palmers are fairly to be regarded as in the nature of covenants. (*Avery* v. *N. Y. C. & H. R. R. R. Co.,* 106 N. Y. 142, 154, 155; *Post* v. *Weil,* 115 id. 361.)

Calling these restrictive provisions restrictive covenants for convenience, however they should be denominated in strict legal terminology, and assuming that by themselves and considered alone they only bound the grantees, in view of the facts above set forth, I think it may be fairly said that these covenants come within the first class designated by the Court of Appeals in *Korn* v. *Campbell* (192 N. Y. 490, 495), there characterized as " those which are entered into with the design to carry out a general scheme for the improvement or development of real property." This class is defined as follows: " This class embraces all the various plans, generally denominated in the English cases as building schemes, under which an owner of a large plot or tract of land divides it into building lots to be sold to different purchasers for separate occupancy, by deeds which contain uniform covenants restricting the use which the several grantees may make of their premises. In such cases the covenant is enforceable by any grantee as against any other upon the theory that there is a mutuality of covenant and consideration which binds each, and gives to each the appropriate remedy. Such covenants are entered into by the grantees for their mutual protection and benefit, and the con-

sideration therefor lies in the fact that the diminution in the value of a lot burdened with restrictions is partly or wholly offset by the enhancement in its value due to similar restrictions upon all the other lots in the same tract."

The language of WILLS, J., in *Nottingham Patent Brick and Tile Co.* v. *Butler* (L. R. 15 Q. B. Div. 261, 268), seems to me pertinent: "The principle which appears to be deducible from the cases is that where the same vendor selling to several persons plots of land, parts of a larger property, exacts from each of them covenants imposing restrictions on the use of the plots sold without putting himself under any corresponding obligation, it is a question of fact whether the restrictions are merely matters of agreement between the vendor himself and his vendees, imposed for his own benefit and protection, or are meant by him and understood by the buyers to be for the common advantage of the several purchasers. If the restrictive covenants are simply for the benefit of the vendor, purchasers of other plots of land from the vendor cannot claim to take advantage of them. If they are meant for the common advantage of a set of purchasers such purchasers and their assigns may enforce them *inter se* for their own benefit." The judgment in this case was affirmed in the Court of Appeal and is reported in L. R. 16 Q. B. Div. 778.

The circumstances in the case at bar are somewhat different from those in the case referred to, still I think they are such as to justify me in finding and I do find that the restrictive covenants in the conveyances from the Palmers were meant for the common advantage of the purchasers.

There is, however, an additional and convincing reason to show that the Palmers meant these covenants to be for the common advantage of the purchasers, in these particular words in the restrictive provisions, to wit, "which shall render adjacent premises undesirable for residence." While these words undoubtedly limit or amplify the preceding words "or use said premises for manufacturing, trade or other purposes," still in them there was afforded and adopted an opportunity to point out and indicate the general purpose of the restrictions. The expression "adjacent premises" does not necessarily refer to lots that touch each other, but one of the

usual definitions of "adjacent" is "neighboring." Here certainly we have presented a sufficient basis to say that these restrictions are and were designed to be mutual and for the benefit of the owners of lots in the tract sold and to have been sold.

But it is argued that there could be no general scheme on the part of the owners of the tract of land to prohibit the construction of buildings within twenty feet of the lines of streets, because the limit was fixed at fifteen feet in a few conveyances. These few exceptions where the space is fixed at fifteen feet are not enough to invalidate the general scheme.

It is also argued that because there are no restrictions in the conveyances by which the Palmers conveyed lot No. 17 in block No. 335 and lots Nos. 9, 10, 14, 16, 18, 19, 20, 22, 23, 24, 26, 27, 28, 30, 31, 32, 33, 34 and 35 in block No. 336, it cannot be held that there was a general scheme for prohibiting the construction of buildings in the space twenty feet from the street lines. It will be remembered that there are about two hundred and fifty lots in all and it cannot be successfully contended that because the conveyances of twenty of these lots contained no restrictions there was no general scheme for that purpose. Nineteen of these twenty lots were conveyed by one deed to Onondaga Park Land Company, dated May 6, 1903. The name of this grantee indicates nothing in hostility to the residential scheme. Moreover, these lots may have been conveyed with verbal restrictions of the same kind as those appearing in the other conveyances and such restrictions would be valid and binding. (*Tallmadge* v. *East River Bank,* 26 N. Y. 105.)

In this connection it may be recalled as a corroborative circumstance that it does not appear that any building on the whole tract is within twenty feet of a street line except the defendant's garage.

There is another view to take of the relative rights of the parties and this view is confined to a consideration of the conveyances of lots Nos. 1 and 2, the defendant's lots, lot No. 3, the plaintiff's lot, and lot No. 4, the Snow lot.

The Palmers conveyed lot No. 4 to Mary A. Snow by deed dated May 31, 1893, which was recorded June 5, 1893, lot No. 3 to Anna E. Gray by deed dated July 13, 1895, which

was recorded September 14, 1895, and lots Nos. 1 and 2 to Arthur Jenkins by deed dated July 29, 1896, which was recorded August 3, 1896.

The Snow deed was the first conveyance, the Gray deed was the next, and the Jenkins deed the last. The Snow deed contained the same restrictions as the Gray deed which appear in the foregoing and the restrictions in the Jenkins deed also appear in the foregoing.

As already shown, the prohibitive words, "which shall render adjacent premises undesirable for residence," indicate clearly that the restrictions in each of the deeds were for the benefit of "adjacent premises." The narrowest meaning of the word "adjacent" is "bordering on." Lot No. 3, the plaintiff's lot, borders on lots Nos. 1 and 2, the defendant's lots, and lot No. 4, the Snow lot. Lots Nos. 1 and 2 also border on lot No. 3. When lots Nos. 1 and 2 were conveyed to Arthur Jenkins the restrictions against building within "fifteen feet from the front line of said premises" and providing that no barn or stable should be erected on the premises within fifty feet of Coolidge avenue were inserted in the conveyance to him for the benefit of the property bordering on lots Nos. 1 and 2, to wit, lot No. 3, the plaintiff's lot.

This brings the plaintiff's case within the class referred to by the Court of Appeals in *Equitable Life Assurance Society* v. *Brennan* (148 N. Y. 661, 672), described as follows: "There is a class of cases where the covenant, by a fair interpretation of its language, is not exclusively for the benefit of the grantor, but of other property owners in the immediate vicinity."

The restrictions in the deed to Arthur Jenkins, of which the defendant had notice, were made clearly for the benefit of the premises owned by the plaintiff, and although there is neither privity of estate nor privity of contract between the plaintiff and defendant, equity will afford the plaintiff relief where the defendant violates the restrictions. Although the title of the plaintiff and that of the defendant come from a common source, it is argued that because the plaintiff's premises were conveyed first he can claim nothing by reason of the restrictions in the later conveyance of the defendant's premises. But the answer to that argument is that the restrictions in the deed to the defendant's

grantor were made for the benefit of the plaintiff's premises. This proposition is expressly held in *Barrow* v. *Richard* (8 Paige, 351, 360) and *Brouwer* v. *Jones* (23 Barb. 153, 160, 161).

As the defendant obtained her lots from Arthur Jenkins, her husband, she is chargeable with notice of the restrictions contained in the deed to him. (*Williamson* v. *Brown,* 15 N. Y. 354; *Cambridge Valley Bank* v. *Delano,* 48 id. 326; *Anderson* v. *Blood,* 152 id. 285, 293; *Kingsland* v. *Fuller,* 157 id. 507, 511; *Wilson* v. *Ford,* 209 id. 186, 200.)

The answer also contains this admission: " Defendant further admits that she had notice of the alleged restrictive plan of said Palmers."

I think, therefore, that it is reasonably clear that the plaintiff may maintain this action, if the garage was built in violation of the restrictions.

The defendant contends that lot 1, upon which the garage was constructed, fronts on Tallman street and that the garage is more than fifteen feet from " the front line of said premises." As lot No. 1 is bounded on the north by Tallman street and on the east by Coolidge avenue, the only basis for saying that the lot fronts on Tallman street is the fact that, as laid out, the lot is sixty feet on Tallman street and one hundred and twenty-six and ninety one-hundredths feet on Coolidge avenue.    To carry out the scheme of the Palmers no building should have been erected within fifteen feet of the line of Coolidge avenue, and as the language, " the front line of said premises," would have been appropriate to describe the entire boundary of the two lots, since that boundary was on three streets, it was fairly within usage to regard the entire street line as " the front line of said premises."    The two lots, Nos. 1 and 2, were conveyed together as one lot and as one lot there is a frontage on Coolidge avenue, Tallman street and Onondaga avenue.    Who shall say that one of these streets rather than another is the front line of the premises ?    Is it not better to say that the front line is on all the streets ?    An affirmative answer will uphold the the residential scheme.    A negative answer will seriously mar the scheme.    The affirmative is supported by authority. (*Justices of Bedfordshire* v. *Commrs. of Bedford,* 7 Exch. 658; *City of Des Moines* v. *Dorr,* 31 Iowa, 89, 93.)

Assuming, however, that the expression "front line" may be ambiguous, I think that the condition of Coolidge avenue, with the buildings uniformly back from the line of the street at least twenty feet, together with the restrictions in her grantor's deed, was sufficient to put the defendant upon the inquiry and as the result of that inquiry she was bound to take notice of the restrictions by which the open space in front of the buildings was to be maintained on Coolidge avenue and she was bound to conform to those restrictions. Indeed she would have been bound so to conform if the deed to her grantor contained no restrictions, for, it appearing that the scheme was once formed and its execution entered upon, the Palmers had no right to abandon it without the consent of those for whose benefit it was established and every grantee of a lot with notice was obligated to conform to the scheme.

From the foregoing it must be apparent that the restriction against building a barn or stable within fifty feet of Coolidge avenue contained in the defendant's grantor's deed was binding upon the defendant. The question then arises as to whether the construction of this garage violated that restriction. A garage is a structure having many things in common with a stable. The objectionable features about a stable are the odor, the noise and the danger of fire. The objectionable features about the garage are the same. The Century Dictionary defines a garage as "a stable for motor cars." I think the building of this garage violated the barn or stable restriction.

Generally speaking it seems to me it was ill advised for the defendant to construct her garage in the place chosen by her in every view of the situation. She had full notice of the claim of the owners of property on Coolidge avenue challenging her right to so locate the garage before its construction was begun and she deliberately took the chance that the claim of her neighbors might be vindicated.

I think the plaintiff is entitled to an injunction requiring the removal of the garage and perpetually restraining the defendant from constructing a garage within fifty feet of the westerly line of Coolidge avenue.

Formal findings in accord herewith may be submitted by the plaintiff.