WILLIAM E. HART, Plaintiff, *v.* DWIGHT H. LITTLE, Defendant.

(Supreme Court, Kings Special Term, June, 1918.)

Injunctions — restrictive covenant in deed as to use of premises — acquiescence of plaintiff in defendant's violation of covenant while a tenant.

Where a conveyance is made "subject to the covenants in former deeds, also subject to the provisions of zone restrictions affecting said property," the grantee is estopped from asserting that the property was conveyed to him free of any restrictions which existed with reference thereto at the date of the conveyance to him; he cannot claim its benefits and reject its burdens.

A restrictive covenant in a deed, running with the land, against the use of the property except for the purpose of a private residence, is violated by the grantee using the property exclusively for the business of a private school; such use also violates a further covenant in the deed against permitting any trade or business from being carried on upon any portion of the premises.

But, where plaintiff and defendant are the owners of contiguous properties deriving their title from the same common owner under deeds containing restrictive covenants above mentioned, and, in an action to enforce by injunction such covenants, it appears that before defendant purchased his property he had been a tenant thereof for three years and during that period had conducted a school thereon for private pupils under similar conditions to those now complained of, and it further appears that neither plaintiff's wife, his predecessor in title, nor he by their conduct or statements indicated any opposition to the opening and the maintenance of the

school by defendant as tenant of the building, nor had during such tenancy taken any steps to enforce the covenant, defendant was justified in assuming that at least they did not regard his use of the property for a school as a violation of their rights, and having in such circumstances changed his relation to the property from that of lessee to owner, and paid a substantial price therefor, he will be granted judgment upon the merits for the dismissal of the complaint on the ground that it would be inequitable to prevent his continued use of his property as a school.

ACTION for a permanent injunction.

George F. Alexander, for plaintiff.

Francis X. Carmody, for defendant.

BENEDICT, J.　The suit is brought to enforce through the medium of a permanent injunction a restrictive covenant as to the use of real property. Plaintiff and defendant are the owners of contiguous properties, and derived their titles from the same common owner through mesne conveyances. The relation of the two parcels is shown on the following diagram:

Each property was conveyed by the Manor Realty Company by a deed containing covenants as to the

character and use of buildings which should be erected upon the property. These covenants are in practically identical form, so far as they apply to the question to be determined, although there are slight variances in other parts of the covenants. It may be observed that the complaint is defective because it does not allege that the defendant's property is subject to restrictive covenants creating negative easements as to user akin to those which it alleges were imposed by the Manor Realty Company in respect of the plaintiff's property. This defect, however, in pleading is not raised by the defendant, but on the contrary the defendant by his answer practically assumes the existence of such covenants as applicable to his property, and he further admits in the eleventh paragraph of his answer that the restrictive covenants were part of a general scheme devised by the framer of the restrictions. Under this admission much of the argument of the defendant's counsel falls to the ground.

If, however, the restrictive covenants in question are not part of a general scheme for the improvement of the property, yet it does not lie in the mouth of the defendant to urge that the covenant is not binding upon his property. This for the reason that his deed expressly recites that the title which is conveyed to him is taken " subject to the covenants contained in former deeds, also subject to provisions of zone restrictions affecting said property." This provision operates as an estoppel which prevents the defendant from asserting that the property conveyed to him was conveyed free of any restrictions which existed with reference to his property at the date of his conveyance. In other words, he cannot claim the benefit of the conveyance to him and reject the burdens which he assumes by accepting the conveyance. *Kingsland* v. *Fuller*, 157 N. Y. 507, 510. Only if there were no restrictions

existing at the date of the conveyance to him, then so much of the deed as assumes the existence of such restrictions would be inapplicable, but, if in fact restrictive covenants were then in force as to the property so conveyed to him, his acceptance of the deed subject to them imposes upon him the duty of observing and performing the covenants. It should be noticed that not only was his deed subject to the covenants contained in former deeds of his property, but it expressly refers in the description to the record of the prior deed made by the former owner of his property to the predecessor in the plaintiff's title. It is a well-settled rule that whatever the purchaser finds upon the record affecting the title, both of benefit or detriment, he is chargeable with notice of, to the same extent as if the notice which the record gives to him were actual and not simply constructive. " The record is notice of everything deducible from its contents as matter of law. \* \* \* Notice of a recorded instrument is notice of the covenants contained in it, and all equities and rights growing out of or incident to it." Webb on Record of Title, §§ 176, 177, 181. The defendant, therefore, had notice that his property and the plaintiff's had theretofore been subject to the burden and the benefit of similar restrictions. What was the nature of these restrictions? The Manor Realty Company had granted the property to defendant's predecessor in the title, Mary E. Pounds, subject to certain restrictions — and similar covenants were also contained in the deed then of record from the Manor Realty Company to William H. Sawkins, the plaintiff's predecessor in the title to the adjoining lot. These covenants had not been released. They were as follows:

"And the said party of the second part, for herself, her heirs and assigns does hereby covenant and agree

to and with the said party of the first part, its successors and assigns as follows:

" *First.* That neither the said party of the second part, nor her heirs or assigns, shall or will erect or permit upon any portion of said premises any building except a detached dwelling house and that such dwelling house shall be constructed for one family only, shall have a cellar and shall not be less that two stories in height, and shall not cost less than five thousand dollars, and shall not have a roof of the character or description known as a flat roof; except also a building especially designed and intended to be used by a private family for storing an automobile, such building shall conform in architecture and construction to buildings in the neighborhood, shall be located in the northwest corner of the plot above described, shall not be built nearer to the rear or westerly line or the northerly side line of said plot, than five feet.

" *Second.* That neither the said party of the second part, nor her heirs or assigns, shall or will erect or permit more than one such dwelling on the premises hereby conveyed, or on a parcel of land fifty feet frontage by one hundred feet in depth, of which the parcel hereby conveyed shall at any time become a part. The party of the first part reserves the right to modify this restriction in other conveyances of gore plots.

" *Third.* That neither the said party of the second part, nor her heirs or assigns, shall or will manufacture or sell, or cause or permit to be manufactured or sold, on any portion of the premises hereby conveyed any goods or merchandise of any kind, and will not carry on, or permit to be carried on any portion of said premises any trade or business whatsoever.

" *Fourth.* That neither the said party of the second part, nor her heirs or assigns shall or will erect or

permit upon any portion of the said premises any tight board or close built fence whatsoever, nor any fence or hedge nearer the street line on which said house fronts than the front wall of the house, nor any fence or hedge whatsoever of a greater height than four feet.

" *Fifth.* That neither the said party of the second part, nor her heirs or assigns, shall or will erect or permit upon any portion of the said premises any building or part of building within twenty-five feet of the street line of East Seventeenth Street; this covenant shall not apply to steps nor to bay or oriel windows of three feet or less in depth, nor to piazzas upon buildings erected in accordance with the above restrictions of ten feet or less in depth.

" *Sixth.* That neither the said party of the second part, nor her heirs or assigns shall or will permit any house to be built upon a foundation higher than five feet above the level of the curb.

" *Seventh.* That neither the said party of the second part, nor her heirs or assigns shall or will permit the finished grade of plot at the front wall of the house to be more than thirty inches above the level of the curb.

" *Eighth.* That neither the said party of the second part, nor her heirs or assigns shall or will permit any terrace or step between the street sidewalk and the piazza or veranda steps.

" *Ninth.* That neither the said party of the second part, nor her heirs or assigns shall or will permit upon any portion of said premises any public or private stable for horses or other animals, or any pig sty, cow shed, hen house, slaughter house, or building, except as above set forth, nor any nuisance of any kind, description or nature. The above covenants in each and every particular to run with the land, and shall

be construed as real covenants running with the land until January 1st, 1925, when they shall terminate.''

These restrictive covenants are thus shown to be real covenants running with the land and binding upon any owner of the property affected by them during the time prescribed for the life of the covenants. The plaintiff's property was, as has been noted, subject to a similar covenant, and this fact, as I have said, the defendant had notice of when he purchased the property. I am of opinion, therefore, that there was mutuality of benefit and burden between these two parcels of land under the restrictive covenants creating the reciprocal negative easements which have been recited, and that as to the other parcel each parcel was a dominant as well as a servient tenement; and further that the order in which the restrictions were imposed does not signify. See *Beach* v. *Jenkins,* 174 App. Div. 813, 822; *Silberman* v. *Uhrlaub,* 116 id. 869, 872. While the text writers are not all agreed that these restrictive covenants are in their nature easements at common law for the purpose of their enforcement through common law remedies, unless the element of privity of estate be present, yet, they all agree that they are easements in equity enforceable, if they run with the land, without regard to privity of estate, but depending solely on the doctrine of notice. See Fowler's Real Prop. Law (2d ed.) 695 and 702; Sims on Covenants which Run with the Land other than Covenants of Title, 31, 227. Mr. Reeves speaks of them as negative equitable easements and says: '' They are brought into existence and enforced by courts of equity, for the purpose of working out justice between owners of neighboring lands, and in disregard of the existence or non-existence of privity, or contractual or conventional relationship of any kind between such neighbors.'' See 1 Reeves on Real Prop. §§ 148, 149.

It thus appearing that the restrictive covenants creating the negative easements in question existed with regard to the defendant's property at the time of his purchase, the next questions to be determined are first, whether he has violated or invaded the restrictions and, secondly, whether the plaintiff has the right to seek the aid of a court of equity for their enforcement.

I have reached the conclusion upon the first point, without any difficulty whatever, that the restrictive covenant does not permit the defendant to use the premises owned by him for the purpose of conducting or carrying on a school under the conditions and in the manner in which he is now doing. It is clearly established by the evidence that the defendant is not using the property for the purpose of a private residence, but that he is using it exclusively for the business in which he is engaged, namely, that of conducting a private school. That this is a violation of the covenant, both in regard to the use of the property as a dwelling house for a single family and as carrying on, or permitting to be carried on, " on any portion of said premises, any trade or business whatsoever," is too plain to require argument. The plaintiff's contention, that the maintenance of a school in which, as in the present case, pupils are taken for pay and teachers are employed to instruct them, amounts to the conduct of a business, is well sustained by the authorities, and it makes no difference that the school is a well-conducted, orderly and useful adjunct to the community life in its neighborhood; the degree of the violation is not material.

The defendant in his answer asserts that the covenant has ceased to be operative on account of a change in the character of the neighborhood. There is no proof in the case that the neighborhood has undergone

a change such as would bring the case within the rule laid down in *Trustees of Columbia College* v. *Lynch,* 70 N. Y. 440. It is true that since the erection of the buildings upon the two properties under consideration there have been built on the southerly side of Newkirk avenue, between East Seventeenth and East Sixteenth streets, buildings which are used, or erected for use, as business buildings. That property, however, is not and never was within the restricted area. East Seventeenth street, on both sides, northerly from Newkirk avenue (the restricted area), is a highly developed residential neighborhood with detached dwelling houses for single families and is entirely different, both in the character of the street formation itself and of the buildings fronting on it, from the condition which exists south of Newkirk avenue.

It cannot successfully be contended that the covenant under consideration is applicable only to the character and style of the building to be erected upon the defendant's property. As Jenks, P. J., held, in *Goodhue* v. *Pennell,* 164 App. Div. 821, the object of the covenant was not merely to regulate the structure itself as to its exterior, but as to its use as well. The covenant is to be construed with reference to what is the apparent object of the covenant. Clearly, that object in the present case was that the building upon the defendant's premises should be used for the purpose of a dwelling house for a single family during the life of the covenant, viz.: until January 1, 1925.

We come lastly to the contention of the defendant that the plaintiff is not entitled to enforce in equity the covenant under consideration. The defendant asserts by his answer, and it appeared upon the trial, that before he purchased the property which he owns he had been the tenant thereof for three years beginning in May, 1914, and during those three years had

conducted a school for private pupils upon the property under similar conditions to those of which the plaintiff now complains. He asserts that the plaintiff made no objection to the conduct of such a school, indeed, that he encouraged the defendant in the opening and maintenance of the school by sending two of his children to the school when it was first opened and keeping one of them therein for a school year and the other for a shorter period. The question is therefore presented whether the plaintiff is barred by *laches* or by any principle of equitable estoppel from insisting upon the observance of the terms of the restrictive covenants by the defendant. In *Rowland* v. *Miller,* 139 N. Y. 92, Judge Earl referred to the fact that the plaintiff in that case had never violated the agreement herself, or consented to, or authorized, or encouraged, its violation by others. And the same principle was applied in *Levy* v. *Halcyon Casino Hotel Co.,* 45 Misc. Rep. 289. But, in my judgment, that principle cannot be applied in the instant case. While it is true that the plaintiff did not own the property adjoining the defendant's property at the time that the defendant opened his school, he was living in it at the time with his wife and children, and he must be presumed to have known the facts concerning the opening, maintenance and conduct of the school in the defendant's adjoining house. His wife owned the house and he derived his title from her by her will. She made no objection to the opening of the school, and either he or she signed the applications of their children for admission thereto and paid the defendant for the instruction of their children by the defendant so long as the children attended the school. Furthermore, the plaintiff made no objections to the maintenance of the school after he had, for reasons of convenience, removed his children therefrom. His title to the property and his right in

equity to enforce the covenant is of no higher quality than that of his wife. As neither she nor he by their conduct or statements indicated any opposition to the opening and maintenance of the school by the defendant as tenant of his building, nor had during his tenancy taken any steps to enforce the restrictive covenant, the defendant was justified in assuming that at least they did not regard his use of the property for such a school as a violation of their rights. It was under those circumstances that the defendant changed his relation to the property in question from that of lessee to owner. He paid a substantial sum for the property, and I think it is not unfair or unreasonable to assume that he would not have purchased it with the intention of using it as a school if he had been made aware of the attitude of opposition on the part of the plaintiff which has lately developed. Under these circumstances it would be inequitable, I think, to permit the plaintiff at this time to seek, through the aid of this court, to prevent the defendant from making the same use of his property as the plaintiff had acquiesced in and tacitly assented to his making of it for three years before he had changed his position and circumstances by purchasing the property.

Judgment will therefore be granted in favor of the defendant upon the merits, dismissing the complaint, with costs.

Complaint dismissed.