HELEN C. PERPALL, Plaintiff, *v.* LIZZIE GLOAD, Defendant.

(Supreme Court, Kings County, October, 1921.)

Injunctions — mandatory — restrictive covenants — easements — deeds — restrictions against "barn or private stable" include garage.

A restrictive covenant as applied to land creates an easement which is negative in character when the owner of the servient tenement by such an easement is restricted in the exercise of the natural rights of property.

A negative easement when it runs with the land may be enforced in a court of law, but equity will also raise or imply negative easements of an equitable nature when they are not such as a court of law would enforce.

The grantee in a conveyance made subject to the covenants and restrictions contained in former recorded deeds affecting the property, is presumed to have knowledge of the same, even though in some of the deeds in the chain of title there is no direct reference to restrictive covenants.

Plaintiff and defendant are the respective owners of adjoining premises claiming their title by mesne conveyances from the original owner of both properties. All the mesne conveyances of the defendant's property, from the original grantee to defendant, recited that the property was conveyed subject to restrictive covenants of record and the conveyance to defendant was made subject to the " covenants and restrictions as contained in former recorded deeds affecting said premises." The original grantee had covenanted for herself, her heirs and assigns, not to erect or permit to be erected upon the premises " any building other than a private residence costing not less than $5,000, with the exception that a barn or private stable may be erected or used on that part of the premises lying west of a line drawn parallel with East Nineteenth street, and distant seventy (70) feet westerly therefrom," and by an instrument in writing entered into between the original grantor and the grantee of the original grantee it was agreed that such covenant and restriction should inure to and be for the benefit also of the grantees, heirs and legal representatives of the

parties to said instrument, and all persons claiming by, from or under them or either of them. *Held,* that defendant's property was subject to the negative easement contained in the deeds to the original grantee of said property.

A "barn or private stable" mentioned in the covenant was not limited to a stable for horses or any other animals but includes an automobile garage, and the erection of such a structure by defendant upon her own property within seventy feet from East Nineteenth street and within seventeen feet of the side windows of plaintiff's house and yet more than sixty feet away from the nearest part of defendant's own residence, is a violation of the original restrictive covenant.

The garage having been built by defendant after she had notice from plaintiff that she would claim that it was being erected in violation of the restrictive covenant, the judgment in favor of plaintiff in an action to restrain such erection will include a mandatory injunction compelling the defendant to remove the garage.

ACTION for an injunction.

Paul Bonynge (Donald H. Millard, of counsel), for plaintiff.

Richards, Smyth & Conway (Albert Conway, of counsel), for defendant.

BENEDICT, J.    This action was brought to restrain the erection by the defendant of a garage upon her property which adjoins the property of the plaintiff. A motion for a temporary injunction to restrain the erection of the building was denied at the Motion Term, and the defendant proceeded with the construction of the garage and completed it.    The defendant is the owner of a plot of land in Flatbush, situated on the northwesterly corner of Albemarle road (formerly known as Avenue A) and East Nineteenth street. The plot has a frontage of 70 feet on Albemarle road

and a depth on East Nineteenth street of 150 feet. Adjoining it on the north is the plaintiff's property consisting of a lot having a frontage of 50 feet on East Nineteenth street by a depth of 100 feet. The relation of the two plots is shown on the following diagram:

EAST 19ᵀᴴ STREET

Upon the defendant's property there stands a reconstructed dwelling house fronting on Albemarle road and the rear of which is more than eighty feet south of the plaintiff's southerly line. On the plaintiff's property stands a frame dwelling house facing on East Nineteenth street. The defendant has constructed close to the southerly line of the plaintiff's property a frame and cement garage twenty-two feet in depth by twenty feet in width, with a runway of about forty-six feet from the front of the garage to East Nineteenth street. The rear wall of the garage stands on a line less than sixty-eight feet westwardly from the westerly line of East Nineteenth street.

Both plaintiff and defendant derived title through mesne conveyances from one Richard Ficken. The

deeds which Ficken made of the two properties in question contained the covenants of restriction which will now be recited.

Ficken conveyed the property of which the defendant's property forms a part to one Catharine M. G. Moon by two deeds, both bearing date May 1, 1889, and recorded on January 25, 1890, in liber 1942 of Conveyances at pages 58 and 61 respectively. The first of these two deeds (Plaintiff's Exhibit 6) conveyed a plot described as follows:

" Beginning at a point at the intersection of the northwesterly corner of Avenue A and East Nineteenth Street and running thence Northerly along the Westerly side of East Nineteenth Street one hundred and fifty feet thence running westerly and parallel with Avenue A one hundred feet thence running southerly and parallel with East Nineteenth Street twenty-four feet thence running easterly and parallel with Avenue A fifty feet thence running southerly and parallel with East Nineteenth Street one hundred and twenty-six feet to Avenue A and thence easterly along the northerly side of Avenue A fifty feet to the point or place of beginning."

This deed contained this covenant on the part of the grantee:

" The party hereto of the second part, Catharine M. G. Moon doth hereby covenant for herself her heirs and assigns with the party of the first part Richard Ficken his heirs and assigns that the said party of the second part her heirs or assigns will not erect or permit to be erected on the said premises above described or any part thereof any building for the keeping storing or maintaining of any fire engine hose carriage or hook and ladder truck or appliances and will not erect a *building* on said premises or any part thereof costing less than five thousand dollars

and that no stable shall be erected on said premises within seventy-five feet of the west line of East Nineteenth Street.''

The second deed from Ficken to Moon (Plaintiff's Exhibit 7), conveyed the parcel of land described as follows:

'' Beginning at a point on the northerly side of Avenue A distant seventy feet westerly from the Northwesterly corner of Avenue A and East 19th Street running thence northerly and parallel with East 19th Street one hundred and twenty-five feet thence westerly and parallel with said Avenue A thirty feet thence again Northerly and again parallel with East Nineteenth Street one foot thence easterly and again parallel with Avenue A fifty feet thence southerly and parallel with East 19th Street one hundred and twenty-six feet to the northerly side of Avenue A and thence westerly along said northerly side of Avenue A twenty feet to the point or place of beginning,'' subject to a covenant against nuisances and also against the erection of '' any building whatever for the period of twenty years from date, nor at any time any building except upon the building line as now established.''

By an agreement entered into on the 27th day of May, 1899, between Richard Ficken and Teresa A. Scott, who at that time was the owner of the property conveyed by Ficken to Catharine M. G. Moon, it was, for the purpose of clarifying and defining the meaning and intent of the covenants in the Moon deeds, agreed that the covenants, restrictions, provisions and agreements in said Moon deeds contained should be construed to read as follows:

'' The party of the second part hereto for herself, her heirs and assigns will not erect or permit to be erected on the said premises in said deeds described

any building other than a private residence costing not less than $5,000 with the exception that a barn or private stable may be erected or used on that part of the premises lying west of a line drawn parallel with East Nineteenth street, and distant seventy (70) feet westerly therefrom. And it is further understood and agreed that this covenant and restriction shall have the same force and effect as if originally instituted in the deeds aforesaid in the place of those in said deeds mentioned, and shall enure to and be for the benefit also of the grantees, heirs and legal representatives of the parties hereto, and all persons claiming by, from or under them or either of them.''

In practically all of the mesne conveyances of the defendant's property from Moon to the defendant there were recitals that the property was conveyed subject to restrictive covenants of record or in certain cases to '' all liens '' on the property conveyed. In the deed to the defendant Gload it was recited that the property was conveyed '' subject however to covenants and restrictions as contained in former recorded deeds affecting said premises.''

Turning now to the title of the plaintiff to her property we find that the deed contains a covenant against nuisances and against the erection on the property of '' any barn or stable for horses,'' and also that no dwelling costing less than $5,000 should be erected upon the plot. This covenant was continued in subsequent deeds down to and including the deed to the plaintiff.

By the two recited deeds from Ficken to Moon there had been conveyed in addition to the property now owned by the defendant a plot twenty-five feet in width by thirty feet in depth lying immediately to the west of the defendant's westerly line and immediately south of the plaintiff's southerly line, and lying west-

erly of a line drawn parallel with East Nineteenth street and distant seventy feet therefrom. This parcel had at some time, which the evidence did not indicate, been lopped off the defendant's property and is not now owned by her. It was the only portion of the Moon property on which a barn or private stable could have been built. Hence it follows that if the covenants in the Moon deed are to be given the effect claimed for them and if that small parcel is not owned by the defendant there is no other place on her present plot on which a barn or private stable can be erected. At least, I think that such was the intention of the parties who created the restriction originally.

It is the contention of the defendant, among other things, that there has been such a change of the neighborhood in which the respective properties of the plaintiff and defendant are situated that the plaintiff is not entitled to the relief sought by this action, but this I do not find upon the evidence to be the fact. Neither do I find that the plaintiff has precluded herself from asking for an injunction by reason of the fact that there is a private garage erected upon her own property, for the reason that such private garage stands more than seventy-five feet back from the westerly line of East Nineteenth street and that the covenant in the deed to the plaintiff's predecessor in title refers in the restrictive covenant distinctly to a "barn or stable *for horses.*"

The defendant also laid some stress on the fact that in some of the deeds in her chain of title there was no direct reference to the restrictive covenants contained in the Moon deeds, nor in the agreement between Ficken and Scott explanatory of these covenants. This, however, is of no consequence because by the recital in the deed to the defendant that the property is conveyed subject to covenants and restrictions con-

**37**

tained in former recorded deeds she is presumed to have had knowledge of the state of the record as contained in all prior recorded conveyances affecting her property. *Kingsland* v. *Fuller*, 157 N. Y. 507, 510. There are two questions which are of consequence in this case. The first is whether the covenants affecting the defendant's property are enforceable by the plaintiff; and the second is, if so enforceable do they prohibit the erection of the garage which has been built by the defendant.

A restrictive covenant as applied to land creates what is known in law as an easement, that is, a servitude without any profit whatever out of the substance of the neighboring tenement but merely the right to claim from it submission or forbearance. Easements may come into existence in several ways, among which are that of an express private grant and an express or implied reservation when, on the severance of tenements by a grantor, an advantage which the tenement reserved received from the one granted is expressly or impliedly reserved to the reserved tenement and thenceforward enures as an easement over the tenement granted. An easement is negative in character when the owner of the servient tenement is restricted in the exercise of the natural rights of property by the existence of the easement. In the case at bar the basis of the plaintiff's claim is that the defendant's property is burdened with a negative easement in favor of the plaintiff's property which prevents the erection of such a garage as the defendant has erected. A negative easement may be enforced in a court of law where it runs with the land, but equity will also raise or imply negative easements of an equitable nature where they are not such as the court of law would enforce. Such negative equitable easements are referred to in Reeves on Real Property

as being " brought into existence and enforced by courts of equity for the purpose of working out justice between owners of neighboring lands, and in disregard of the existence or non-existence of privity or contractual or conventional relationship of any kind between such neighbors. Their most prominent and frequent illustration is presented by the owner of a tract of land selling it off in separate lots or parcels to different purchasers and inserting in the deeds, or otherwise imposing upon the vendees, stipulations as to the kinds of buildings which may be erected upon the property, or the trades or sorts of business which may be there carried on, or the uses in other respects to which it may be put." In the case of *St. Stephen's Church* v. *Church of the Transfiguration,* 59 Misc. Rep. 560, Judge O'Gorman says: " It is well settled that the dominion which the law gives every owner of real estate over his lands invests him with power, when he conveys the same, to impose restrictions on its use by the new owner. The only limitation upon this power is that it must be exercised reasonably and with a due regard to public policy. * * * *Cowell* v. *Colorado Springs Co.,* 100 U. S. 56." In *Equitable Life Assurance Society* v. *Brennan,* 148 N. Y. 661, Judge Bartlett, at page 671, says: " While it may not be possible to harmonize all the authorities in this country and England on the subject of equitable negative easements, yet a few general rules may be regarded as settled by the cases. It is not necessary in order to sustain the action that there should be privity either of estate or of contract; nor is it essential that an action at law should be maintainable on the covenant; but there must be found somewhere the clear intent to establish the restriction for the benefit of the party suing or his grantor, of which right the defendant must have either actual or con-

structive notice." In *Korn* v. *Campbell*, 192 N. Y. 490, 495, Judge Werner, writing for the Court of Appeals, gives the well-known definition regarding restrictive covenants, which he divides into three classes, but holds that the case then before the court did not fall within any of such classes. The first class which he refers to is where restrictive covenants are entered into with the design to carry out a general scheme for the improvement or development of real property. " The second class embraces those cases in which the grantor exacts the covenant from his grantee, presumptively or actually, for the benefit and protection of contiguous or neighboring lands which the former retains. In such cases the grantees, if there are more than one, cannot enforce the covenant as against each other, although the grantor, and his assigns of the property benefited, may enforce it against either or all of the grantees of the property burdened with the covenant." He points out, on page 497, that the plaintiff there did not stand in the place of the original grantor who had exacted the covenant. " He stands for the land burdened and not for any land benefited by the covenant. And in that regard the plaintiff and the defendant are upon precisely the same footing with reference to the original covenant. Neither is under any covenant obligation to the other, although both may possibly be bound to the original covenantor. In other words, the case can only be brought into the second class by a plaintiff who acquired the title of Lenox to lands for the benefit of which the covenant was made."

In the case at bar the restrictive covenant under consideration was plainly created by Ficken for the benefit of the property of which he remained the owner at the time when the covenant was imposed. It was clearly the intention of the parties, both in the

original deed by Ficken to Moon and in the agreement between Ficken and Scott, that the covenant was not merely a personal covenant between the parties but was to " enure to and be for the benefit also of the grantees, heirs and legal representatives of the parties hereto, and all persons claiming by, from or under them or either of them." It seems to me that the case at bar comes plainly within the rule laid down by Chief Judge Andrews, writing for the Court of Appeals in *Phœnix Insurance Co.* v. *Continental Insurance Co.*, 87 N. Y. 400, 408, where he held that the covenant was not binding on the defendant " * * * merely because he stands as an assignee of the party who made the agreement, but because he has taken the estate with notice of a valid agreement concerning it, which he cannot equitably refuse to perform."

I can reach no other conclusion, therefore, upon these authorities except that the defendant acquired her property subject to the negative easements contained in the Ficken deeds.

The last point to be considered is whether the erection by the defendant of a private garage violates the restrictions against a private stable. The covenants in the deeds to Moon and the agreement with Scott prohibited the erection of any building costing less than $5,000, with the exception only of a barn or stable, providing such barn or stable is erected on that part of the premises conveyed lying west of a line drawn parallel with East Nineteenth street and distant seventy feet westerly therefrom. This imposed upon the grantee the necessity of choosing whether she desired any garage at all or a garage which should not stand closer to East Nineteenth street than seventy feet. The same necessity confronts her grantee, the present defendant. In my

opinion the building of defendant's garage within seventy feet from East Nineteenth street is a violation of the original covenant.

The question is whether the garage built by the defendant falls within the prohibition of the restriction against the erection of a barn or private stable.

In this connection it should be noted that the barn or stable mentioned in the covenant is not limited to a stable *for horses or any other animals* and I think the term used includes an automobile garage. I had occasion, in the case of *Schmolke* v. *Hardy,* N. Y. L. J. Nov. 3, 1919, to consider the question whether a garage came within the definition of a stable within the purview and for the purposes of the interpretation of a restrictive covenant, and I followed in that case the ruling in *Beach* v. *Jenkins,* 174 App. Div. 813, where it was held that the building of a garage violated the barn or stable restriction then under consideration. See, also, the case of *Hepburn* v. *Long,* 146 App. Div. 527, distinguishing *Beckwith* v. *Pirung,* 134 id. 608.

While it does not affect in any wise the legal questions involved in this case, I cannot help observing that it is a matter of regret that, although the defendant at one time had agreed not to build the garage close to the plaintiff's southerly line, she afterward changed her mind and built it where it now stands. By placing it where it now stands it is within seventeen feet of the side windows of the plaintiff's house and yet is more than sixty feet away from the nearest part of defendant's own residence. The placing of it where it stands seems to have been an unnecessarily detrimental and unneighborly act on her part, and it indicates her own view that it would be to her advantage to have the garage as far removed as she possibly could put it from her own dwelling, thereby

materially increasing the fire hazard as well as the nuisance arising from the noise and odors incident to the storage and use of automobiles in close proximity to the plaintiff's dwelling. If the defendant have a legal right to do this, no court would be justified in depriving her of such right. But for the reasons herein stated, I have reached the conclusion that her act is inequitable and unlawful.

As has been noted, the defendant prosecuted the work of building the garage after being informed of the plaintiff's claim in respect of the covenant under discussion. For this reason and notwithstanding the fact that the preliminary injunction was refused, a mandatory injunction should issue. Mr. Pomeroy in his work on Equity Jurisprudence (Vol. 4, § 283, p. 3978) says: "Where a party knowingly, and against remonstrances, builds in violation of restrictive covenants, a mandatory injunction may issue to compel the removal of such portions of the building as are in violation thereof. * * * *Attorney-General* v. *Algonquin Club,* 153 Mass. 447. If such relief were not allowed, something not short of a right would be claimed by stoutly asserting an invalid claim." See, also, *O'Connor* v. *Bauer,* 127 App. Div. 854; Jones Ease. (1898 ed.) § 890. In *Salomon* v. *Sperb* a judgment in an action of this kind was entered in New York county on September 24, 1906, and this judgment was affirmed without opinion by the Appellate Division (120 App. Div. 875), and also without opinion by the Court of Appeals (193 N. Y. 624). That action was begun to compel the defendant to take down a building which he had erected on the rear portion of premises No. 745 Sixth avenue, in alleged violation of a covenant contained in a deed made by a former owner of the property dated April 1, 1859, providing that the property there in suit should not

be built on but should be left free and open unless the written consent of the parties of the first part in the deed or their assigns should first be had and obtained. The building complained of was erected in 1892. The action was not begun until June, 1903. The judgment, following the prayer of the complaint, required the defendant " to forthwith take down and remove the said building or structure and every part thereof at his own expense and enjoined and restrained the defendant from further maintaining the said building or structure and from thereafter erecting or maintaining or suffering to be erected or maintained upon said premises, or any part thereof, any building or structure whatsoever without the written consent of the plaintiff or his assigns." While the hardship of a removal of the defendant's garage is not lost sight of by the court, it is a circumstance for which no blame rests on the plaintiff, who very early manifested a neighborly disposition to make no complaint if the defendant would put the objectionable building nearer to her own dwelling and farther away from that of the plaintiff.

I shall, therefore, grant judgment in favor of the plaintiff, with costs, as prayed for, including a mandatory injunction compelling the defendant to remove the garage from her property, it having been built after she had notice from the plaintiff that the plaintiff would claim that it was being erected in violation of the restrictive covenants referred to.

It may be that the plaintiff and defendant will be able to agree that the garage may remain somewhere on the defendant's premises on condition of the defendant's compensating the plaintiff in money damages for the injury which she has sustained. If the parties can agree upon such a sum, the decree may provide for it in lieu of the mandatory injunction.

I have passed upon the requests submitted by both parties and they are filed herewith. The plaintiff's attorney will prepare a decision which will include all facts found for either party.

Ordered accordingly.