22 N.J. Super. 32 (1952)
91 A.2d 497
THE CITY OF NEWARK, PLAINTIFF-APPELLANT,
v.
JOHN V. MARTIN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 30, 1952.
Decided October 7, 1952.
*33 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. Michael Breitkopf argued the cause for plaintiff-appellant (Mr. Charles Handler, Corporation Counsel of the City of Newark, attorney; Mr. Joseph A. Ward, on the brief).
Mr. Ralph G. Mesce argued the cause for the defendant-respondent (Messrs. Carl & Wm. Abruzzese and Mr. Ralph G. Mesce, attorneys; Mr. Ralph G. Mesce, on the brief).
The opinion of the court was delivered by GOLDMANN, J.A.D.
On and before July 10, 1951, defendant conducted a parking lot at 341 Washington Street, Newark, located in an area zoned as a Second Business Zone by the Newark zoning ordinance adopted January 8, 1930. Section 7 of the ordinance (as amended July 23, 1930 and May 15, 1940) prohibited the use of any building or premises in such a zone as a "public garage." Section 1, "Definitions," provides that:
"(aa) The term `public garage' shall be construed to mean any building or premises in which a business, service or industry connected with motor vehicles is conducted or rendered, and shall include all premises used for motor vehicles either housed or unhoused, excepting automobile salesrooms conducted exclusively for the exhibition of not more than twenty vehicles."
On October 15, 1951, defendant was convicted in the Municipal Court of the City of Newark and fined $200 for *34 conducting a parking lot on the premises in question on July 10, 1951, in violation of section 7 of the zoning ordinance. He appealed to the Essex County Court where the conviction was reversed on the ground that a parking lot is not a public garage. 19 N.J. Super. 328 (Cty. Ct. 1952). The court indicated that the language of the definition of "public garage" was ambiguous and left to implication whether or not the clause "and shall include all premises used for motor vehicles either housed or unhoused" was intended to include parking lots. It held that if it were the intent to interdict by ordinance the conduct of a parking lot, the ordinance would have so stated.
There is no ambiguity in the language of section 1 (aa) in its application to parking lots. The significant words of the definition of "public garage" are:
"any * * * premises in which * * * service * * * connected with motor vehicles is * * * rendered, and shall include all premises used for motor vehicles * * * unhoused, * * *."
The word "premises" includes within its purview a vacant lot, and is not confined, as the defendant argues, to structures. The definition speaks of "any building or premises," clearly indicating that the word "premises" is not limited to a building or buildings.
The court below stressed that the term "parking lot" "connotes an operation that is distinct from any other business connected with the sale, repair or servicing of automobiles." The phrase "service * * * connected with motor vehicles" is not to be limited to the "servicing of automobiles" in the sense that the trial judge apparently used the word "servicing," viz., the providing of gasoline, oil, grease and tire service, and the like. Providing open-air parking facilities is a "service * * * connected with motor vehicles," within the definition of the ordinance.
The definition expressly includes within the meaning of the word "premises" used in the first clause, all premises used for unhoused motor vehicles. It must be concluded *35 that the ordinance clearly prohibited defendant's operation of a parking lot without first having obtained a variance from the zoning board of adjustment.
As a matter of fact, defendant labored under no doubt or uncertainty that such a variance was necessary. The record shows that he had applied for a variance from the terms of section 7 of the zoning ordinance on November 2, 1950 and that the board of adjustment denied the application on January 4, 1951, some six months before the violation date. Moreover, a second application for a variance was filed with the board in October 1951, after the zoning officer of the City of Newark had denied defendant's application for an "automobile parking station" permit for the premises in question on October 9, 1951. The record does not show what disposition the board made of this application.
Defendant's main argument is that the word "garage," whether used in the sense of a private garage or public garage, of necessity connotes the idea of a building or structure in which vehicles are housed. Support for this contention is sought in other parts of the zoning ordinance defining "private garage" or dealing with accessory uses in so-called Second and Third Residence Districts and First Business Districts. The cross-references are not pertinent because those sections expressly state or clearly imply that the word "garage," in the special context of the respective provisions, means a building or structure. Our attention must remain focused on the express language of section 1 (aa) defining "public garage."
"Garage" does not have the restricted meaning which the defendant would assign to it, of a building or structure for the storing of automobiles. The word is not a static or dormant concept, but dynamic, like any other word which has found its place in modern usage. Adopted into the English language from the French, the meaning of "garage" has expanded with the years. It is not, in the dated language of Smith v. O'Brien, 46 Misc. 325, 94 N.Y.S. 673, 674 (Sup. Ct. 1905), "the modern substitute of the ancient livery stable," *36 or, as was said in Beach v. Jenkins, 174 App. Div. 813, 159 N.Y.S. 652, 657 (App. Div. 1916), "a stable for motor cars." Such definitions are more appropriate to an era when relatively few owned a "horseless buggy" than to the motor age of the mid-20th Century when automobiles are owned by millions and have become a symbol as well as a major problem of our society.
In 1928 our former Supreme Court held in Northern New Jersey Oil Co. v. Board of Adjustment of Newark, 6 N.J. Misc. 698, 699, that "garage," within the meaning of the then Newark zoning ordinance, included a "gasoline service station." The court pointed out that until only a few years before "gasoline service stations" were unknown and the service rendered by them was to be found only at garages. There are different kinds of garages, said the court, some furnishing automobiles with gas and oil, others offering repair service, and others providing storage or car hire, and all were referred to as "garages."
Under the ordinance definition, "public garage" clearly imports a parking lot.
In City of Chicago v. Ben Alpert, Inc., 368 Ill. 282, 286; 13 N.E.2d 987, 989 (Sup. Ct. 1938), the defendant insisted that an open air parking lot was not a garage, and therefore the City of Chicago lacked power to license and regulate such a business under Ill. Rev. Stat. 1937, c. 24, § 65.81 empowering city councils to regulate the use and construction of garages. The Supreme Court of Illinois held that the city did have power to regulate and license open air parking lots. The court said that the failure of the General Assembly to define "garages" did not render cities
"impotent to cope with the everchanging conditions of a mobile and complex society. In short, cities and villages are not restricted, in directing the location and regulating the use and construction of garages, to such premises as may have conformed to the accepted popular definition of the word `garage' in 1911, when it was incorporated in the statute. Conditions attending the storage and parking of automobiles in metropolitan areas today are vastly different from those prevailing a quarter of a century ago when the state empowered *37 cities to regulate and license garages. It is common knowledge that in cities considerable areas are devoted to parking and storing motor vehicles. Casual observation will disclose that in some instances the premises are denominated parking lots and, in others, outdoor or open-air garages. We are not required to be insensible to this mode of transacting an important part of the automobile business."
Cf. Rhodes v. A. Moll Grocer Co., 231 Mo. App. 751, 760; 95 S.W.2d 837, 841 (Ct. App. 1936), where the court declined to accept defendant's contention that the word "garage" means "an inclosed, roofed shelter for automobiles," stating that under the dictionary definition "whether the roof was a man-made one or the canopy of heaven, seems to be immaterial."
The judgment of the County Court is reversed.