## Attorney General *vs.* William H. Gardiner.

Suffolk. Nov. 21, 1874. — May 8, 1875. Wells & Devens, JJ., absent.

The Commonwealth, being the owner of a large tract of land, made an indenture with the owner of adjoining lands, by the provisions of which streets were laid out through the whole territory, and building upon the front of the lots abutting thereon was restricted. *Held,* that the Commonwealth might enforce the restriction by information in equity, filed by the attorney general, against any person bound thereby.

The Commonwealth, being the owner of a large tract of land, made an indenture with the owner of adjoining lands, whereby streets were to be laid out through the whole territory, and it was provided that buildings upon the principal street "shall never be erected on the lots belonging to either party, bounding on said street, any part of which buildings shall be within the distance of twenty feet from the front line of such lots; provided, however, that fences may be erected and maintained on the said front line of said lots, and steps and other usual projections from the fronts of said buildings may be made within said distance of twenty feet from said front line." The Commonwealth afterwards conveyed to the defendant's grantor *a lot on said street, subject to the following stipulations and agreements :* that any building erected on the premises should be of a specified height, and should not be used for certain purposes; and "that the front wall thereof, on said street, shall be set back twenty feet from said street, provided that steps, windows, porticos, and other usual projections appurtenant thereto, are to be allowed in said reserved space of twenty feet." The deed to the defendant conveyed the estate subject to all the stipulations, agreements and restrictions contained in the deed from the Commonwealth. The defendant built a house on his land, the front wall of which was set back the proper distance from the street, and in front of the house built a structure three and one half feet high, extending from the wall of the house to the line of the street, the top of which was covered by turf, and the interior used for coal bins. All the reserved spaces, in front of the other houses on the street, were filled to a height of three or four inches from the line of the sidewalk, and sloped upward to a line at the house of nine to twelve inches, to prevent water from running towards the building. *Held,* that the structure built by the defendant upon his lot was a violation of the restrictions in the indenture and in the deed; and, upon information in equity by the attorney general, should be ordered to be removed.

Information in equity, filed August 16, 1867, by the attorney general, in behalf of the Commonwealth, to restrain the construction and compel the removal of a projection or structure in front of the defendant's house on Commonwealth Avenue in Boston.

*Hearing* upon information, answer, replication and proofs before *Colt,* J., who made a report to the full court, referring to the information and answer as parts thereof, reserving all questions as to the form of the proceeding and the parties thereto, and by

which it appeared that the following facts, alleged in the infor-
mation, were admitted by the defendant :

The Commonwealth in and before 1856 was seised of certain
lands in the Back Bay in Boston, formerly covered by tide water.
By the Resolve of 1856, *c.* 76, the Legislature appointed a com-
mittee with full authority, subject to the approbation of the gov-
ernor and council, either to release, upon such terms and condi-
tions as they should think fit, the right, title and interest of the
Commonwealth in and to any and all of the lands in the Back
Bay, or " to devise plans for the improvement of said territory,
or any part thereof," and adjust and compromise all differences,
disputes and claims with any parties interested, or claiming any
right, title or interest, in any lands in the Back Bay.

The committee appointed under that resolve devised a scheme
for the improvement of said lands, and 'a plan of the prem-
ises was prepared and approved by the committee, and copies
thereof filed in the registry of deeds on September 2, 1858, and
with this information.   One of the contemplated streets laid
out on that plan was called Commonwealth Avenue, beginning
at the street west of the Public Garden, called Arlington Street,
and extending westwardly a mile and a half towards Brookline,
two hundred feet in width, with ornamental spaces in the middle
thereof one hundred and twelve feet wide, and with spaces twenty
feet in width left open for turf and shrubbery upon the front of
the lots.   And the committee devised, as part of said scheme,
that all houses built upon this avenue should be set back twenty
feet from the front lines of the lots, and that spaces twenty feet
in width should be left open for turf and shrubbery in front of
the houses.

On December 27, 1856, an indenture between the Common-
wealth and the Boston Water Power Company, a corporation
largely interested in adjacent lands, was executed and acknowl-
edged by that corporation, and by the legislative committee and
the commissioners on the Back Bay in behalf of the Common-
wealth, and presently afterwards approved by the governor and
council, and such approval certified, by their direction, by the
secretary of the Commonwealth upon the indenture, and the same
recorded in the registry of deeds.   By that indenture, provision
was made for filling up the lands in the Back Bay with earth and

gravel; it was agreed that Commonwealth Avenue should be laid out of the clear width of two hundred feet, of which not less than forty-four feet on each side should be appropriated and used as a street, part to be roadway and part sidewalk, and to remain forever open and unobstructed; and the centre, one hundred and twelve feet in width, " be appropriated for a walk, the planting of trees, shrubbery and grass, and otherwise ornamented, so as to exclude carriages, horses, and other vehicles and animals from the same, excepting when intersected by streets or avenues; " it was further agreed by the parties to the indenture that buildings "shall never be erected on the lots belonging to either party bounding on said avenue, any part of which buildings shall be within the distance of twenty feet from the front line of such lots; provided, however, that fences may be erected and maintained on the said front line of said lots, and steps and other usual projections from the fronts of said buildings may be made within said distance of twenty feet from said front line ; " the Commonwealth covenanted to lay out, and did thereby lay out, " so much of said avenue herein described, of the width of two hundred feet, as passes through the land belonging to said Commonwealth; that neither said Commonwealth nor its assigns shall ever erect, or cause to be erected, any building on the lots bordering on said avenue, within twenty feet from the lines thereof on either side ; and that said avenue shall be kept open and used for the purposes and in the manner hereinbefore mentioned and described, forever; " and the Boston Water Power Company made like covenants with respect to so much of the avenue as passed through its lands.

On May 2, 1860, the Commonwealth conveyed a parcel of land, with a front of three hundred and thirty-four and a half feet, on the northerly side of Commonwealth Avenue, between Arlington and Berkeley Streets, and bounded by Berkeley Street on the west, to Samuel Hooper, by warranty deed, referring to said plan, and " subject to the provisions hereinafter contained: "

" Said premises to be filled up by the Commonwealth to a level not more than four feet below the level of the mill dam, as fixed by the top surface of the hammered stone at the southeasterly corner of the emptying sluices.

" This conveyance is made upon the following stipulations and agreement: That any building erected on the premises shall be at least three stories high for the main part thereof, (or two stories with a Mansard roof,) and shall not in any event be used for a stable, except a private stable, or for any mechanical, mercantile or manufacturing purposes; that the front wall thereof on Commonwealth Avenue shall be set back twenty feet from said Commonwealth Avenue; provided that steps, windows, porticos and other usual projections appurtenant thereto are to be allowed in said reserved space of twenty feet. That the streets in said Back Bay, on which said premises bound, shall be filled up and graded, and the curb-stones set, and the gutters thereof paved by the Commonwealth, and that the same shall be forever kept open to be used for all the purposes for which public highways may be lawfully used, except horse railroads; provided, that the owners of said lands for the time being shall have the right to cultivate trees in the sidewalks, in front thereof, leaving a distance of not less than ten feet between the front lines of the lots and such trees. That no cellar or lower floor of any building shall be placed more than four feet below the level of the mill dam, as fixed by the top surface of the hammered stone at the southeasterly corner of the emptying sluices.

" And said Commonwealth reserves the right to enter upon the premises by its agents, and at the expense of the party at fault, to remove or alter, in conformity with the above stipulations, any building or portion thereof which may be erected on the premises by the said grantees, or their representatives or assigns, in a manner or to a use contrary to the above stipulations."

A part of this parcel, with a front of fifty feet on Commonwealth Avenue, was conveyed by various mesne conveyances to Thomas F. Cushing, who on September 11, 1866, conveyed it to the defendant, subject, by the terms of each of these conveyances, " to all the stipulations, agreements and restrictions contained in said Commonwealth's deed to Hooper, reference to which is hereby had."

The Commonwealth also sold a considerable number of lots upon Commonwealth Avenue, between the parcel conveyed to Hooper and Arlington Street, to divers purchasers, by deeds similar in all respects to the deed to Hooper, and the conditions,

restrictions and reservations in which are still in force; and the Commonwealth has other lots on said avenue which it desires to sell.

The defendant objected to the admissibility of the indenture between the Commonwealth and the Boston Water Power Company to affect the rights acquired by him under his deed; and it was admitted in evidence, saving his exception thereto.

The information alleged that the defendant had commenced the erection of a dwelling-house upon his land, " and has not left the said reserved space of twenty feet in front thereof upon said lot open and clear, and free from unusual projections and structures; but has commenced the erection, in said reserved space of twenty feet, of a substantial and unusual brick projection and structure, extending and projecting from said dwelling-house to the front of said lot upon the line of Commonwealth Avenue, and of the height of several feet, the same not being designed for steps, windows, porticos or other usual projections appurtenant thereto, greatly incumbering and filling said reserved space, destroying the uniformity and diminishing the beauty of said street, and in violation of the terms of said deed of the Commonwealth to Samuel Hooper, causing great complaint on the part of the owners of other lots upon said street, and injuring and reducing the market value of the remaining lots of the Commonwealth thereon; " and that on June 27, 1867, the commissioners on public lands, in behalf of the Commonwealth, requested the defendant to remove the said projection and structure, or so to change the same as to conform to the terms of said deed, but he neglected and refused to comply with the request.

The defendant in his answer " admits that he has erected a dwelling-house on his said lot; but denies that he has not left a space of twenty feet in front thereof open and clear (except from the usual projections allowed by the deeds under which he claims) for turf and shrubbery, and free from any unusual projection or structure, inconsistent with, or restricting the use of said space for turf and shrubbery; and he denies that he has commenced the erection of any such unusual projection or structure, as is alleged in said bill, but admits that, in the filling up of his lot, (which, when conveyed to him under the deeds aforesaid, was several feet below the level of the street, and was so left by the Common·

wealth to be filled up by the purchaser to such grade as might be found convenient for his building,) he filled and raised the said space to a height about three feet above the existing level of said street, and that the said filling and raising was partly with brick, covered with earth, for the accommodation of coal-bins beneath the surface of said space allotted for turf and shrubbery; and he denies that such coal-bins are an unusual projection to buildings for domestic use, or that they incumber or fill up the space reserved as aforesaid for turf and shrubbery, or that such raising of the said space as aforesaid diminishes the beauty of said street, or destroys the uniformity thereof, (except so far as absolute uniformity of building, not prescribed by any deed, law or order, may be lawfully, properly and tastefully departed from,) or causes any just complaint from the owners of other lots, or diminishes the market value of any remaining lots of said Commonwealth; and further he denies that the said raising of the surface of the ground, and the said filling up below such surface, in the manner and for the purpose aforesaid, violate the terms of said deed to Hooper, or constitute any unusual projection within the meaning of said deed. And he admits that after the filling up as aforesaid with brick, for coal-bins, was entirely completed, and it remained only to cover the same with soil for turf and shrubbery," he received from the commissioners on public lands a notice informing him that some of the abutters on Commonwealth Avenue had made complaint in regard to certain obstructions on the "reserved space" fronting the building being erected by him, and the commissioners believed "that those obstructions violate the conditions of the deed made by the Commonwealth," and required him to remove them, or to so change them as to conform to those conditions; "and that he has not complied with the requirement thereof to remove or change what are therein called obstructions, meaning the filling up and raising aforesaid, which could not then be removed or changed without great expense, nor without great damage to the general appearance of the building, and to the beauty and uniformity of the street."

The residue of the judge's report was as follows: " It was also admitted that the said land of the defendant was filled by the Commonwealth to a level six feet below the level of the street. It appeared that in the fall of 1866 the defendant began, and

has since completed, the construction of a dwelling-house to be occupied by himself on his said land, in accordance with certain plans prepared by architects ; that the front wall of said house is set back at the proper distance from the line of Commonwealth Avenue ; that in front of said house, and extending from said front wall to the line of the street, there is what is known in architecture as a terrace, or raised garden for grass and shrubbery, being an embankment three and one half feet high above the general level of the sidewalk, surrounded on the front and easterly side by a solid stone wall eighteen inches in thickness, and rising about ten inches higher than the turf of said terrace, (not, however, forming part of the front wall of said house,) and on the westerly side by the steps of said house ; that below the surface of said terrace, and rising two feet and four inches above the level of the sidewalk, are brick coal-bins, constructed in the usual manner, the space from the top of said bins to the surface of said terrace being filled with earth ; that in the surface of said terrace there are three apertures of the size of ordinary coal-holes, communicating with the coal-bins below, the covers of said apertures being Hyatt lights, so called, and also a fourth aperture near the house, two feet square, covered by a Hyatt light, for lighting the larder below said terrace, and that there are also coal-holes communicating with said bins by a channel sloping backward towards the house, in the sidewalk in front of said house.

"The judge found as a fact that such terraces are a common architectural device in building in the country ; that they are not usual on level ground in the city ; that it was not shown that there is any other instance of such a terrace on the Back Bay ; that all the reserved spaces in front of the other houses on said avenue rise to a height of three or four inches from the line of the sidewalk, at the sidewalk, and slope upward towards the houses to a height at the house of nine to twelve inches above the sidewalk, to prevent the water from being thrown towards the building ; that it is usual in the vicinity of this house to construct coal-bins and larders like those of the defendant, except as to height, beneath the reserved spaces in front of said other houses, and on the Commonwealth lands on the Back Bay. But the plaintiff objected to the introduction of any evidence relative to building beneath said reserved spaces, as immaterial.

"It appeared that steps are universally built in said reserved spaces, and that it is common to use all the space beneath the steps as cellars or rooms for various purposes; that it is not unusual for two adjoining owners of houses on said avenue to build a common flight of steps, often of the width of eighteen or twenty feet; and that the steps of the house in question rise from the sidewalk to the height of seven feet at their junction with the house.

"It further appeared that it is usual to mark the front line of the lots on said avenue, and also the line of division between the adjoining lots, by fences or walls; and that, in the opinion of experts, neither said fences or walls, nor said terrace, form a part of the front wall of said building, or are projections from the wall or building.

"The case is reserved for the consideration of the full court, for such order or decree as may be required."

*W. G. Colburn,* Assistant Attorney General, (*C. R. Train,* Attorney General, with him,) for the Commonwealth.

*D. E. Ware,* (*S. L. Thorndike* with him,) for the defendant.

GRAY, C. J. The Commonwealth, in devising the scheme of improvement of the Back Bay lands, and in executing the indenture with the Boston Water Power Company for the purpose of carrying that scheme into effect, acted in a twofold capacity: as the proprietor of lands which it held and might sell, as an individual might; and as the sovereign power, authorized to lay out highways for the benefit of the public. The provisions and restrictions contained in the indenture, against building on the front part of the lots, are manifestly intended not merely to enhance the market value of the lands, but also to increase the symmetry and beauty of the highways laid out through them. The Commonwealth may therefore enforce these provisions and restrictions, against all persons bound by them, by information in equity in the name of the attorney general. Story Eq. Pl. § 49.

The terms of the indenture, and of the deeds under which the defendant acquired his title, equally restrict and prohibit the erection of any building within twenty feet of the line of Commonwealth Avenue. The indenture expressly stipulates that no part of any building shall be within the distance of twenty feet

from the front line of the lots, with a proviso allowing the erection, within the reserved space, of nothing but fences on the front line of the lots, and "steps and other usual projections" from the fronts of the buildings. The deed from the Commonwealth to Hooper, subject to all the stipulations, agreements and restrictions contained in which the defendant took his title, is declared to be made upon the stipulation and agreement that the front wall of any building erected on the premises shall be set back twenty feet from Commonwealth Avenue, "provided that steps, windows, porticos and other usual projections appurtenant thereto are to be allowed in said reserved space of twenty feet."

The mere filling up of the reserved space to the height of three or four inches at the line of the sidewalk, sloping upwards to the height of a foot or less at the front line of the houses, to prevent the water from being thrown towards the building — as found by the report to have been done upon other lots bounding upon the avenue — could not be deemed a violation of any of these stipulations or restrictions.

But the structure erected by the defendant within the reserved space, to a height of three feet above the existing level of the street, alleged in the answer to be made for the accommodation of coal-bins, and stated in the report to be "what is known in architecture as a terrace," is no part of the defendant's dwelling-house, nor a projection from or appurtenant to it, but is of itself a building, within the meaning of the restrictive clauses both in the indenture and in the deeds. And so much of it as rises above the usual line of the reserved spaces in front of the houses on Commonwealth Avenue must therefore be removed within a reasonable time. *Linzee* v. *Mixer*, 101 Mass. 512. *Tallmadge* v. *East River Bank*, 26 N. Y. 105. *Clark* v. *Martin*, 49 Penn. St. 289.

No question of laches appears to have been made at the hearing, or is reserved by the report, or, upon the facts found, could avail the defendant.                    *Decree for the plaintiff.*