ATTORNEY GENERAL *vs.* ALGONQUIN CLUB.

Suffolk.   January 26, 1891. — April 1, 1891.

Present: FIELD, C. J., W. ALLEN, C. ALLEN, HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Deed — Restriction — Laches — Mandatory Injunction.*

A deed from the Commonwealth of land on Commonwealth Avenue in Boston stipulated that the front wall of any building erected thereon should be set back twenty feet from the avenue, with a proviso that "porticos and other usual projections" appurtenant to such wall might project into the reserved space, subject however to the limitation, among others, that "no projection in the nature of a bay window," etc. was to be allowed, "unless any horizontal section of such projection would fall within the external lines of a trapezoid whose base upon the rear line of the aforesaid space does not exceed seven tenths of the whole front of the building, nor exceed eighteen feet in any case, and whose side lines make an angle of forty-five degrees with the base." *Held,* that the basement story of such a building, surmounted by a balcony such as had never been usual in this country, was not a "usual projection" within the meaning of the deed. *Held, also,* that each of several bay windows on the building must fall within the external lines of a trapezoid, whose base, while it might overlap upon a portico or balcony, was clear of that of the adjoining bay window, and did not extend beyond the exterior lines of the building, and the combined bases of all the trapezoids must not exceed seven tenths of the whole front of the building.

Before the front wall of a building was erected on the land, a remonstrance was made by the proper officers of the Commonwealth against the construction of any unauthorized projections thereon; and after its completion an information was brought for the removal of such projections upon its basement story, as well as of others of a minor character above that story. *Held,* that no laches could be imputed to the Commonwealth, and that a mandatory injunction should issue for the removal of such projections as were insisted upon, unless so slight as to fall within the maxim *de minimis.*

INFORMATION IN EQUITY, at the relation of the Harbor and Land Commissioners, for the removal or alteration of certain portions of the defendant's club-house, situated upon Common-

wealth Avenue in Boston, which were alleged to violate the restrictions in a deed from the Commonwealth under which the defendant derived its title. Hearing before *Holmes*, J., who reported the case for the determination of the full court. The facts appear in the opinion.

The case was argued at the bar in January, 1891, and in the March following was submitted on the briefs to all the judges.

*H. N. Shepard,* for the Attorney General.

*G. Putnam,* for the defendant.

C. ALLEN, J. The general provision in the deeds under which the defendant holds its title is, that "the front wall of any building erected on the premises on Commonwealth Avenue shall be set back twenty feet from said Commonwealth Avenue." But in this reserved space of twenty feet "steps, windows, porticos, and other usual projections appurtenant to said front wall, are to be allowed," subject to certain limitations.

The first question arises upon the meaning of the words, "and other usual projections." The general front wall of the defendant's club-house, above the basement story, is set back twenty feet; but the basement story is built nearer to the avenue than the rest of the building, and is surmounted by a balcony. It has been found that balconies were usual projections in Boston, but "basements surmounted by a balcony as in this building have never been usual in Boston, . . . and there was no evidence that they have ever been usual in this country; but they are usual in European architecture, and are well known to cultivated architects, and are a natural incident but not a necessary feature of a building of the class to which this club-house belongs." The question is, whether under these circumstances the basement projection is to be deemed a usual projection, within the meaning of the deeds.

The general object of the provision is manifest. The avenue, it is said without dispute, was laid out by the commissioners of the Commonwealth of the width of two hundred feet, and it was designed to secure a further space of twenty feet on each side which should be substantially free from buildings. The language is a modification, adopted in 1863, of language used in earlier deeds, and it was no doubt adopted after much considera-

tion, and it was thereby intended to define limits which should not be infringed upon. No projections within the line of twenty feet are to be allowed, except steps, windows, porticos, and other usual projections. In the next clause, " door-steps and balustrades connected therewith, and also cornices at the roof of the building," are specified as projections which are allowable. It is then provided, that " no projection in the nature of a bay window, circular front, or octagon front, with the foundation wall sustaining the same, (such foundation wall being a projection of the front wall,) will be allowed," unless within certain defined limits, and extending over only a certain portion of the front of the building. No other projections are mentioned in the deeds.

These various provisions serve to throw some light upon the meaning of the words " other usual projections appurtenant to said front wall." And looking at the general object of the provision, at the collocation of the words allowing other usual projections appurtenant to the front wall, and its close connection with other enumerated projections, steps, windows, porticos, and at the express restriction that no projection in the nature of a bay window, circular front, or octagon front, with the foundation wall sustaining the same, will be allowed, except to a limited extent not reaching over the whole front, we find it impossible to accept the conclusion that a whole basement story may be advanced into the reserved space. Giving as wide a scope as we deem permissible to the words " other usual projections," they must at the least be such projections as were usual in this country at the time the deeds of the Commonwealth were given. If the builders desire a greater scope for ornamentation and variety in the erection of a building than this will allow, it must be obtained by setting back the front wall. Upon the facts stated, the projection of the basement story cannot be deemed a usual projection, within the meaning of the deeds; and whether the restriction was wise or not, and whether or not the enforcement of it will have a tendency to check elegant architecture, we cannot do otherwise than give effect to the meaning of the words adopted by the officers of the Commonwealth, when once that meaning is ascertained.

Since the projecting basement story cannot stand as a usual

projection, any projection from the line of twenty feet which can be vindicated must come under some other head.

The projections which are allowed within the reserved space of twenty feet are subject to certain limitations, namely:

" No projection of any kind, other than door-steps and balustrades connected therewith, and also cornices at the roof of the building, will be allowed to extend more than five feet from said front wall into said space."

" No projection in the nature of a bay window, circular front, or octagon front, with the foundation wall sustaining the same, (such foundation wall being a projection of the front wall,) will be allowed, unless any horizontal section of such projection would fall within the external lines of a trapezoid, whose base upon the rear line of the aforesaid space does not exceed seven tenths of the whole front of the building, nor exceed eighteen feet in any case, and whose side lines make an angle of forty-five degrees with the base; and each house in a block shall be considered a separate building within the meaning of this limitation."

The defendant's club-house has a front of eighty-two feet, and the basement story is so constructed that certain portions of the front wall, called screens, can be removed; and if this is done, it will then appear that the projections of the basement comprise a porch at the centre of the building, with two bay windows on each side of it. These bay windows are built so near to each other that the bases of their trapezoids overlap each other, and the sum of the bases of the trapezoids is more than seven tenths of the whole front of the building. The defendant contends that this may properly be done, and that, to take a strong illustration, a series of narrow projecting windows might be built from the ground, with only a small space between them, with the bases of their trapezoids far overlapping each other, and the sum of the bases not only exceeding seven tenths of the whole front of the building, but even exceeding the whole length of its entire front. The defendant contends that there is nothing in the language of the limitation in the deeds which would prevent this from being done, however unlikely it is that any architect or builder would adopt such a method of construction.

This argument overlooks or disregards the general purpose of

the provision, which was to secure a space of twenty feet from the avenue which should be substantially free from buildings. Certain projections into this space were allowed, but great pains were taken to limit the amount and character of them. If the front of a building is so wide as to admit of the erection of more than one such bay window, to allow the bases of the trapezoids of the several bay windows to overlap each other would be to allow the reserved space to be substantially occupied, instead of keeping it substantially clear. The privilege which is given by the deeds of occupying a moderate portion of the reserved space with projections is not to be exercised in such a manner as to defeat the main purpose of the provision. The limitation is express, that no projection in the nature of a bay window of the kind described will be allowed, unless any horizontal section of it would fall within the external lines of a trapezoid such as is described. To hold that the bases of two or more trapezoids may overlap each other, or may, when taken together, exceed seven tenths of the whole front of the building, would be virtually to nullify the limitation in its application to buildings having a wide front. The provision that " each house in a block shall be considered a separate building within the meaning of this limitation " goes to show that no such construction as the defendant urges upon us was intended. In applying the language used in the deed to the case of a building upon the front of which it is desired to have more such bay windows than one, each bay window must fall within the external lines of a trapezoid not exceeding the dimensions prescribed, the base of which will be clear of the base of the trapezoid for the adjoining bay window, and will not extend beyond the exterior lines of the building; and the combined bases must not exceed seven tenths of the whole front of the building.

The defendant's argument that upon this view it becomes a question of some difficulty to determine which projection shall be altered, or whether the alteration shall be partly in both, is not of force. The defendant will be at liberty to make such alterations as will bring the projections within the limitations prescribed by the deed.

A further question is presented, whether the base of the trapezoid of a bay window can overlap upon a portico, or other usual

projection of that class.  This, as an original question, certainly is attended with no little difficulty.  In behalf of the construction contended for by the defendant, that such overlapping is allowable, it may be urged that the projections referred to in the deeds are of two distinct classes; that projections in the nature of a bay window, circular front, or octagon front, with the foundation wall sustaining the same, such foundation wall being a projection of the front wall, are of one class; that the restriction respecting trapezoids applies only to this class; that other usual projections need not be kept within the linear limits along the front of the building thus prescribed for such bay windows; that porticos and balconies are the principal projections of the other class, not falling within the rule as to trapezoids, and that, however it may be with respect to porticos built from the ground, it is not disputed that a balcony might be so built as to extend along the whole front of the building, provided there were no such bay windows, circular fronts, or octagon fronts; and that, even assuming that the base lines of the trapezoids of the bay windows must keep clear of each other, it does not follow that they must also keep clear of the projections of the other class, since the two classes of projections are treated separately in the deeds.

Such is the argument; and there is certainly force in the proposition that it was probably intended that balconies and porticos might be built in close conjunction with bay windows.  Under such circumstances, if a practical construction has been put upon the provision by both parties, that may now be considered.  *Winchester* v. *Glazier*, 152 Mass. 316, and cases there cited.  The report says, that " it was proved *de bene* that in many cases grantees of the Commonwealth had built bay windows immediately adjoining porches, . . . so that the trapezoid including the bay would overlap the porch."  It is fair to assume that this has been going on since 1863, when this provision in the deeds of the Commonwealth was adopted.  So far as is made to appear, no question has heretofore been raised as to the propriety of this mode of building.  The fact of plain violations of the restriction by other builders would not avail the defendant to excuse a plain violation on its part.  But where the meaning of the deed is in doubt, the long permitted practice of many

other . builders may have some weight in showing what was meant by, the restriction. We have come to the conclusion that the restriction in the deed does not forbid such a mode of building that the base of the trapezoid of a bay window may overlap upon a portico or balcony.

There are certain other minor particulars, in which unwarrantable projections of small extent are found to exist in the upper stories of the club-house. These all depend on exact measurements, and no controversy has been made at the argument in respect to their existence. The Attorney General, on the other hand, does not ask for a decree for their present removal, but only for such a decree as will prevent the defendant from acquiring an absolute right to maintain them beyond the prescribed limits.

The defendant further contends, that the Attorney General ought to be debarred by reason of laches from maintaining the information. The justice before whom the case was heard found that the Commonwealth has lost none of its rights to equitable relief, and reports in detail the facts upon which this finding rested. Upon these facts, his finding was clearly right. Laches is not set up as a ground .of defence in the answer. In *Sullivan* v. *Portland & Kennebec Railroad,* 94 U. S. 806, 811, it is said that it need not be. However this may be, the defence of laches was made without objection at the hearing. It is not, therefore, now to be urged against the defendant that this ground of defence is not open ; but it appeared at the hearing that the officers of the Commonwealth did all that was reasonably necessary to put the defendant upon its guard, and to preserve the right to object to any unauthorized projections.. The course pursued by the defendant in the erection of its club-house was taken deliberately, and under no reasonable misapprehension as to the position or views of the officers of the Commonwealth. It was not necessary to bring the information before the wall was finished. *Linzee* v. *Mixer,* 101 Mass. 512. *Attorney General* v. *Gardiner,* 117 Mass. 492.

There having been no laches in fact, we have no occasion to consider whether laches in any such case can be imputed to the Commonwealth.

The defendant further contends, that the projections are not

of sufficient importance to warrant a mandatory injunction or order for their removal. This argument would be of more weight in a case where a defendant had erected a building with unauthorized projections, in ignorance that they were deemed to be unauthorized, and where he was not aware that his right to do so was disputed. Without considering what should be done in such a case, it is enough to say that such is not the case here. If the defendant, after deliberately proceeding in the face of the remonstrances of the officers of the Commonwealth to erect projections which are now determined to be unwarranted, can yet be heard to urge that after all no order for their removal should be passed, it would gain something not much short of a right by stoutly asserting an invalid claim. The space was reserved for reasons affecting not only neighboring owners, but the public at large. Compensation to the Commonwealth for such an intrusion into the reserved space would be an unsuitable remedy. The injury is one not easily measurable by money. It is then a question whether the defendant shall be allowed to retain its unauthorized projections, or shall be compelled to make such alterations as will bring them within the provisions of the deeds. We cannot say, under the circumstances as they appear, that the injury is trifling or unsubstantial. If one such intrusion into the reserved space is allowed to pass, others must be. When a general plan has been laid out in behalf of the Commonwealth for the improvement of land, and the construction of a broad avenue for the benefit of all purchasers of lots upon it and of the public at large, with specific restrictions requiring conformity thereto inserted in the deeds, it is of importance that architects and builders should understand that the Commonwealth has a right to insist that its rules and limitations must be observed; and a violation so considerable as is shown in the present case, when made in the face of distinct notice and prohibition from the public authorities, cannot be entitled to indulgence, as a matter of right. In a suit brought under such circumstances in behalf of the Commonwealth to enforce the language of its deeds, we are not at liberty to say that the defendant shall not be held bound by the restriction, on the ground that the injury is slight, unless it is so small as to fall within the maxim *de minimis*. Stronger

reasons apply when the suit is brought by the Attorney General to enforce a public right; but even in suits brought by private parties, a removal has been ordered. *Attorney General* v. *Gardiner*, 117 Mass. 492. *Attorney General* v. *Terry*, L. R. 9 Ch. 423. *Attorney General* v. *Cockermouth Local Board*, L. R. 18 Eq. 172, 178. *People* v. *Vanderbilt*, 28 N. Y. 396, and 38 Barb. 282, 287, 293. *Reimer's appeal*, 100 Penn. St. 182. *Peck* v. *Conway*, 119 Mass. 546, 550. *Tucker* v. *Howard*, 128 Mass. 361. *Sanborn* v. *Rice*, 129 Mass. 387. *Linzee* v. *Mixer*, 101 Mass. 512. *Payson* v. *Burnham*, 141 Mass. 547. *Krehl* v. *Burrell*, 7 Ch. D. 551, and 11 Ch. D. 146. *Manners* v. *Johnson*, 1 Ch. D. 673. *Goodson* v. *Richardson*, L. R. 9 Ch. 221.

The deed itself makes express provision for just such cases as this. The " Commonwealth reserves the right to enter upon the premises by its agents, and, at the expense of the party at fault, to remove or alter, in conformity with the above stipulations, any building or portion thereof which may be erected on the premises by the said grantees, or their representatives or assigns, in a manner or to a use contrary to the above stipulations." Instead of enforcing the Commonwealth's view of the meaning of the deeds at all hazards, the Attorney General properly seeks the aid of the court to define the rights of the defendant under them, and to order the removal of all unauthorized projections which may not fairly be deemed to fall within the rule *de minimis*. *Attorney General* v. *Williams*, 140 Mass. 329.

In respect to the basement story a mandatory injunction must issue, and in respect to the other and minor projections there may be a declaration establishing the right of the Commonwealth, but not compelling the defendant to remove them at present, in view of its willingness and request to be allowed to retain them under the assent of the Commonwealth; both to be under the direction of a single justice.

*Decree accordingly.*