42 N.J. Super. 461 (1956)
127 A.2d 210
MILTON JOSEPHSON, PLAINTIFF,
v.
THE FIRST NATIONAL BANK OF BORDENTOWN, A NATIONAL BANKING ASSOCIATION, AND ORSON H. BROWN, WALTER FOSBROOK, FRANK T. TROUT, EDWIN C.B. CLARK, FLORINE H. LUCAS AND BORDENTOWN BANKING CO., EXECUTORS OF THE ESTATE OF J. HAROLD LUCAS, AND, GEORGE L. LONGSTREET, GEORGE J. MOZER, FRANK CAWLEY, AND, HAROLD B. WELLS, JR., WILLIAM H. WELLS, JOINTY, SEVERALLY, OR IN THE ALTERNATIVE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided November 8, 1956.
*463 Mr. Milton Josephson, attorney pro se (Mr. Clifford R. Powell (Messrs. Powell & Davis), of counsel).
Mr. William H. Wells (Messrs. Wells & Wells), attorney for defendants.
HANEMAN, J.S.C.
The plaintiff herein contests the election of five directors of the defendant national bank at an annual meeting held on January 10, 1956, and asserts that he was one of the directors duly elected at said meeting. He as well seeks damages against the individual defendants for failing and refusing to recognize him as such duly elected director. The facts in connection herewith are as follows:
On January 10, 1956 the defendant national bank held its annual stockholders' meeting pursuant to the following notice (A), which was duly published in the Bordentown Register, and also the following notice (B), which was mailed to the stockholders:
(A) "NOTICE  The annual meeting of the stockholders of the First National Bank of Bordentown, Bordentown, N.J., will be held at the bank on Tuesday, January 10, 1956 at two o'clock for the election of directors and for such other business as may lawfully come before it.
FRANK CAWLEY, Cashier."
(B) "NOTICE OF ANNUAL MEETING  The annual meeting of the stockholders of THE FIRST NATIONAL BANK OF BORDENTOWN, BORDENTOWN, N.J., for the election of Directors and such other business as shall come regularly before it, will be held in the Banking House on Tuesday, January 10, 1956, at 2 P.M.
FRANK CAWLEY, CASHIER.
KINDLY SIGN THE ENCLOSED PROXY IMMEDIATELY AND RETURN. IT WILL BE WITHDRAWN IF YOU ATTEND IN PERSON."
*464 No complaint is made of the manner or method by which the annual meeting of the stockholders was called.
The certificate of incorporation of the defendant national bank provided on January 10, 1956, as far as here pertinent, as follows:
"THIRD. The Board of Directors of this Association shall consist of such number of its shareholders, not less than five nor more than twenty-five, as from time to time shall be determined by a majority of the votes to which all of its shareholders are at the time entitled. * * *
FOURTH. The regular annual meeting of the shareholders of this Association shall be held at its main banking house on the second Tuesday of January of each year, at which meeting a Board of Directors shall be elected; * * *."
The by-laws of the defendant national bank provided at that time as follows:
"1. The regular annual meetings of the stockholders of this bank for the election of directors and for the transaction of other legitimate business shall be held between the hours of ten o'clock A.M. and four o'clock P.M. on the day specified in the Articles of Association and the thirty day notice of the time and object of such meetings thereby required shall be given by the President, Vice President, or Cashier by publication in a Bordentown newspaper. The Board of Directors shall, within one month previous to the date fixed for such meetings, appoint three stockholders to be judge of the election for directors, who shall hold and conduct the election and who shall under their hands, notify the person acting as Cashier of this bank of the result thereof as soon as ascertained, and the names of the directors elect. The Board of Directors shall not be less than five and not more than twenty stockholders."
Prior to the meeting of January 10, 1956 the plaintiff had solicited and received proxies from various stockholders, with the avowed intention of having himself elected as a member of the board of directors. Some, if not all, of the defendants who had been directors prior to January 10, 1956, apparently opposed and objected to plaintiff's election to said board. As might have been anticipated, there followed a rather bitter and acrimonious "proxy" fight, in which both sides descended to personalities. With these accusations and personal reflections we are not here concerned.
*465 During the year prior to the annual meeting in question the board of directors of the defendant national bank consisted of nine stockholders. At said annual meeting a resolution was offered and adopted by an affirmative vote of the requisite number of stockholders, reducing the number of directors from nine to five. The defendants had not determined, in advance of the meeting, the number of directors to be then elected. Six candidates, among whom plaintiff was one, were nominated. The vote, being taken by the cumulative method, disclosed that the plaintiff received the sixth greatest number of votes. The five other candidates were thereupon declared elected.
Plaintiff contends that the action in reducing the number of directors at the annual meeting, without prior notice to the stockholders of the intention of taking such action, was illegal and void, and that the number of directors to be elected remained at nine, and he having received the sixth greatest number of votes, was duly elected and should be seated as a director.
It must be recognized that generally a notice of an annual meeting of the stockholders, for the purpose of conducting an election of directors, does not require special notice of any additional business to be transacted at such meetings, unless the same is of an unusual or extraordinary nature, not usually brought up at a general meeting. 5 Fletcher, Cyclopedia Corporations 56.
It should also be noted that the corporation here involved is a national bank, a creature of the Federal Government, and as stated in Bachman v. First-Mechanics, &c., Bank of Trenton, 142 N.J. Eq. 389 (Ch. 1948):
"It must be realized that national banks are the creatures of the federal government and that the Congress possesses the superior power to regulate and control their operations and functions. McCulloch v. State of Maryland, 4 Wheat. 316, 4 L.Ed. 579; Osborn v. Bank of United States, 9 Wheat. 738; 6 L.Ed. 204.
The Congress ordained that there should be in the Department of the United States Treasury a bureau whose chief officer shall be called the Comptroller of the Currency, upon whom the Congress has conferred broad and widespread powers and duties in the administration *466 of the national banking laws. Indeed a fleeting glance at the statutes (Title 12 U.S.C.A.) is convincing of the dignity of his powers and the importance of his numerous duties in the national field of banking and currency. Significantly some of the powers delegated to the Comptroller are judicial in nature, have been so regarded and sustained by authoritative decisions too numerous to require citation here."
The Comptroller of the Currency of the Treasury Department, under date of October 25, 1955, forwarded to defendant national bank a copy of the following instructions which had theretofore been issued:
"If it is desired to change the number of directors to be elected at the next shareholders' meeting, attention should be given now to the steps which will be necessary. If the present articles provide for a variable number of directors, which includes the specific number you desire to elect at this meeting, only a resolution of the shareholders at the beginning of the meeting is necessary to make the change. (In some cases the articles may provide that this resolution must be adopted by the affirmative vote of a majority of all the stock rather than a majority of that represented at the meeting).
However, if the articles provide for a fixed number or for a variable number which does not include the number now desired, it will be necessary to adopt an amendment to the articles, in which case adequate notice would have to be submitted to the shareholders in accordance with the preceding paragraph."
If the articles provide for a variable number of directors, the shareholders should first adopt a resolution fixing the number for the ensuing year, because, with the cumulative voting privilege, it would not be possible to know how many votes could be cast by each shareholder until the number of directors to be chosen is fixed."
It is stipulated that the individual defendants relied upon this directive.
Both the certificate of incorporation and the by-laws of the defendant national bank provide for a board of directors of a variable number. The provision is for a number between a designated minimum and maximum, to be determined by a majority vote by the stockholders.
The action here taken at the annual meeting to reduce the board of directors from nine to five was neither an amendment of the by-laws nor an amendment of the certificate of incorporation. In the light of this provision, at each annual meeting, and incident thereto, the stockholders *467 were required to first determine the number of directors who shall constitute its board for the ensuing year and then proceed to the election of that requisite number. This determination rested solely in the control of the stockholders.
Prior notice of the contemplated action by one of the stockholders to reduce the membership of the board need not and perhaps could not be given in advance of the call of the meeting. This is especially true of the case sub judice, where it has been stipulated that there was no conclusion in advance of the meeting by the then existing board of directors of the number of directors to be elected. To reach any other conclusion would deny the stockholders a right to which they are entitled under both the certificate of incorporation and the by-laws. These two instruments create a contract not only between the corporation and the stockholders, but between the stockholders inter sese. Mayer v. Oxidation Products Co., Inc., 110 N.J. Eq. 141 (Ch. 1932); Moore v. Conover, 123 N.J. Eq. 61 (Ch. 1937); Grupe v. Rudisill, 101 N.J. Eq. 145 (Ch. 1927); Loewenthal v. Rubber Reclaiming Co., 52 N.J. Eq. 440 (Ch. 1894); Einstein v. Raritan Woolen Mills, 74 N.J. Eq. 624 (Ch. 1908); Costello v. Thomas Cusack Co., 96 N.J. Eq. 83 (Ch. 1924); 12 Fletcher, Cyclopedia Corporations 978; Leeds v. Harrison, 7 N.J. Super. 558 (Ch. 1950).
The fixing of the number of the board of directors at the annual meeting was, in view of the facts here present, not such an unusual or extraordinary transaction of business as would require special notice of intention in advance of the meeting.
It is therefore here held that the action of the stockholders in fixing the number of directors at five at the meeting of January 10, 1956 was proper and legal, and that the plaintiff was not a legally elected member of the board of directors. This same conclusion was arrived at in a case singularly striking upon almost parallel facts, entitled In re Fleetwood Bank, 283 N.Y. 157, 27 N.E.2d 974, 130 A.L.R. 152 (Ct. App. 1940).
The complaint will therefore be dismissed.