Rodney C. VARNER et al.,
Plaintiffs in Error,

v.

Sam E. ABOUSSIE and Emily Aboussie,
Defendants in Error.

No. 40601.

Supreme Court of Oklahoma.

Dec. 1, 1964.

W. J. Ivester, Altus, for plaintiffs in error.

Robert B. Harbison, Altus, for defendants in error.

HALLEY, Vice Chief Justice.

Parties will be referred to as in the trial court or by name.

All persons involved in this controversy are lot owners in Monte Vista Addition to the City of Altus, Oklahoma. This addition was platted by there individuals who filed protective covenants and dedication of this addition. Among the covenants set up in this instrument is sub-paragraph (a) of the fourth section which is:

"(a) There shall be a side yard on each side of the building which shall have a width of not less than twenty-five (25) feet."

The defendants, Sam E. Aboussie and Emily Aboussie purchased Lot Three in Block Two of this addition in November of 1961. They began the construction of a house on their lot on July 16, 1962. Before beginning construction Mr. Aboussie had learned that the house he had plans to build would be a little large for the lot so he communicated with Stansell Whiteside and Logan Garnett, two of the three developers of the addition. These men told Sam Aboussie that it would be all right with them for him to erect his residence according to plans. The protective covenants provided that a committee composed of Whiteside and Garnett and Thomas G. Braddock should check plans for the construction of buildings. The first sentence of the second section of the protective covenants is as follows:

"2. No building shall be erected, placed or altered on any building plot in this subdivision until the building plans, specifications and plot plan showing the location of such building has been approved in writing as to conformity and harmony of external design with existing structures in the subdivision, and as to location of the building with respect to topography and finish grade elevation by a committee composed of Thomas G. Braddock, Logan Garnett and Stansell Whiteside, or by a representative designated by a majority of the members of said committee. * * *."

Thomas G. Braddock was never consulted about permitting Mr. Aboussie to build his house according to the plans. Mr. Aboussie under the belief that he had the permission of the committee that passed on such matters, proceeded with the construction of his residence.

Mr. Rodney C. Varner, one of the plaintiffs, learned in August, 1962, that Mr. Aboussie was building his house nearer to the property lines than twenty-five feet. He discussed the matter with Mr. Aboussie. Nothing came of this. About September 15, 1962, Mr. Varner saw a survey of Mr. Aboussie's property which showed definitely that the house violated the provisions of the protective covenants of twenty-five feet of property lines. Mr. Varner had his attorney write Mr. Aboussie about the matter on September 27, 1962. A second letter was sent Mr. Aboussie on October 12, 1962, stating that unless corrective measures were taken to make his house conform to the Protective Covenants, legal action would be taken.

Defendants continued construction so plaintiffs filed this injunction suit on November 16, 1962. The trial of the case was expedited. It was tried to the court on November 28, 1962. It held that defendants had caused no injury to plaintiffs

and denied the mandatory injunction. The plaintiffs appeal.

The evidence showed that Mr. Aboussie went to two of the three of the developers of the addition and got their permission to go ahead with the construction of his home. He also attempted to purchase from Mr. Varner the land necessary to give him twenty-five feet from his house to the property line between him and Mr. Varner. There is sixty-four feet between the Varner home and the Aboussie home. This is fourteen feet more than the minimum permissible under the Restrictive Covenants.

The plaintiff, Varner, concurred with some of his neighbors in letting another property owner in the addition construct his house within sixteen feet of the side lot lines.

The defendant, Aboussie, reasonably thought that the approval of the plans for his home by two members of the committee that could pass on such plans was sufficient for him to complete his home. He did not take a willful attitude. He showed a willingness to get along with his neighbors.

The plaintiffs urge two propositions for the reversal of this cause which are:

"1. The evidence clearly shows that defendants willfully violated the protective covenants.

"2. The defendants being willful violators of the protective covenants, plaintiffs are entitled to the mandatory injunction as prayed for and special damages need not be shown."

As to the first proposition of plaintiffs we cannot agree because we see nothing in Mr. Aboussie's conduct that is willful. He went to two of the three developers of the addition and received their permission to complete his home. It is a nice home and adds to the appearance of the addition. He has offered to buy from plaintiff sufficient ground to make a compliance with the restrictive covenant on plaintiff's property. He has been willing to do equity.

As to plaintiff's Proposition Two, we will not say that plaintiff is entitled to a mandatory injunction. There are cases where equity would step in and issue a mandatory injunction in a case where restrictive covenants have been violated but this is not one of them. We think the rule of "de minimis non curat lex" applies here. The trial judge was of the opinion that the plaintiff suffered no damage whatsoever by the slight violation of the restrictive covenant of building too near the lot line. See Atty. Gen. v. Algonquin Club, 153 Mass. 447, 27 N.E. 2, 11 L.R.A. 500.

The fact remains that there is sixty-four feet between the plaintiff's home and the defendants' home. That is fourteen feet more than the covenants required.

In Kasner et al. v. Reynolds, Okl., 268 P.2d 864, we held:

"Where defendants' encroachment is unintentional and slight, and plaintiff's use not substantially affected, and plaintiff's damage small and fairly compensable, while the cost of removal is so great as to cause great hardship or otherwise make its removal unconscionable, mandatory injunction may be properly denied and plaintiff relegated to compensation in damages."

Plaintiffs' complaint here is apparently on aesthetic grounds and we are of the opinion that the variation from the covenants is so trifling that equity will not interfere here. If there is any property damage the law courts are open to plaintiffs.

In 28 Am. Jur., Injunctions § 21, p. 511, this statement is found:

"The facts which will warrant mandatory relief must be clear, free from reasonable doubt, and disclose irreparable injury to the complainant. Such relief will be refused where the injury is so slight as to bring the case within the maxim 'de minimis non curat lex,' where there is no appreciable damage, where a mandatory decree would require a difficult and expensive act, or where its enforcement would necessitate close and continuous supervision

by the court for an indefinite period. As in other cases of injunction, the court will balance the equities between the parties and consider the benefit to the plaintiff of a mandatory writ as against the inconvenience and damage to the defendant, and award relief accordingly."

See also 43 C.J.S. Injunctions § 87, p. 592, and Foster v. Bunting, Tex.Civ.App., 19 S. W.2d 784.

In light of all the evidence in this case the judgment of the trial court is affirmed.

BLACKBIRD, C. J., and DAVISON, JOHNSON, WILLIAMS, IRWIN and BERRY, JJ., concur.

JACKSON, J., concurs in result.