**Leroy HULL and Doris June Hull, Plaintiffs in Error,**

**v.**

**C. F. BULLARD et al., Defendants in Error.**

**No. 42070.**

Supreme Court of Oklahoma.

July 8, 1969.

Wm. R. Saied, Saied & Porter, Oklahoma City, Marian P. Opala, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for plaintiffs in error.

Hal Whitten, Whitten & Whitten, Oklahoma City, for defendants in error.

DAVISON, Justice.

Leroy Hull and Doris June Hull (defendants below) appeal from a judgment in favor of C. F. Bullard, et al. (plaintiffs below) whereby the Hulls were enjoined from using Lot 1, Block 8, Sec. 2, Bush Hills Sixth Addition to Oklahoma City, Oklahoma, for any purpose other than for residential use, and more especially from

conducting a beauty parlor or salon upon the property. The parties will be referred to by their trial court designation.

The numerous plaintiffs were owners of various lots in the above residential addition and brought this action to enjoin the defendants from operating a beauty parlor in a residence located upon the above described lot. Plaintiffs alleged the operation of a beauty parlor was in violation of the plat restrictions. Defendants' answer admitted they were the owners of the property and that they operated a beauty parlor therein; that they did not willfully violate the restrictions; that they had expended a large sum of money in buying the lot and constructing the building thereon; and that the violation of the restrictions was slight, and the cost of removal was so great as to make removal unconscionable.

There appears to be no dispute as to most of the facts. The plat of the addition and the protective covenants (restrictions) were filed of record August 21, 1959. It was stipulated that the restrictions could be considered in evidence for all purposes. The pertinent paragraphs of the restrictions are as follows:

"1. All lots and land in this addition shall never be used for any commercial business, profession, or any other purpose other than residential use and it is expressly declared that all lots and land in this addition must be used for private residential dwelling exclusively, and shall be used for one family dwellings only except that Lot 1, Block 8, may be used for two family or duplex dwellings. No structure shall be erected, altered, placed or permitted to remain on any residential building plot other than one detached single-family dwelling not to exceed one story in height and a private garage for not more than two automobiles and other outbuildings incidental to residential use of the plot."

"5. No business, trade or activity shall be carried on upon any residential lot. No noxious or offensive activity shall be carried on upon any lot, nor shall anything be done thereon which may be or may become an annoyance or nuisance to the neighborhood."

Defendants bought their lot in March, 1965. It appears the lot is located on the southwest corner of Northwest 50th Street and Utah Avenue and that 50th Street is the north line of the addition. In addition to the notice furnished by the recorded restrictions, the defendant Leroy Hull and the contractor who secured the house building permit and constructed the house on the lot for the defendants, had personal knowledge of the restrictions regarding use of the premises. The house is of similar construction and conforms in appearance with those in the area. Leroy Hull testified that from the start of construction the plan was to put a beauty parlor in what would ordinarily have been an attached two car garage. In building the house, the exterior thereof in the garage area was made to appear as an attached two car garage, with a drive off of Utah Avenue and two overhead garage doors. A large part of the back yard was made into a parking area, with curb and crushed white rock. This area was reached by a driveway from 50th Street. The interior of the garage area was finished as a beauty parlor, complete with three operators' chairs, dryers, mirror and appropriate furnishings and equipment. Entrance to the shop was by means of a door on the north side, and at the side of this door was a one foot by two foot sign, bearing the name of the establishment. Leroy Hull testified the expense of making the garage area into a beauty salon, with carpeting and equipment, and of the parking area, was between $4000 and $5000. The work in the shop was performed by defendants' two daughters and their mother. There was a conflict in the evidence as to whether a traffic problem was created by operation of the shop. Plaintiffs said the cars parked in Utah Avenue hindered traffic. Defendants testified the cars were parked in the rear with a few exceptions.

Plaintiffs' testimony was that there were no other businesses or professions being

conducted in the addition. Defendants testified that a retired minister, who lived next door, did sell from his home a book that he had authored or compiled, but that the book was not printed there and there was no outside sign on the house. There was testimony that 50th Street had been made into a four lane street and that the speed limit had been increased from 30 to 40 miles per hour since defendants bought their property. The testimony shows that to the north, across 50th Street and in another addition, is a church and, in the block west of the church, a filling station and shopping center.

Defendants contend that plaintiffs wholly failed to prove the essential elements of their cause of action.

Defendants argue that the evidence does not support plaintiffs' contentions that there was traffic congestion and deterioration or reduction in property value of the residential neighborhood. Defendants further contend, relative to paragraph 5 of the restrictions, supra, that the operation of a beauty shop is an "occupation" and is not deemed to be a "business" or a "trade," and cannot be considered a "noxious or offensive" activity.

This argument, whether valid or not valid, assumes that plaintiffs are entitled to enforce only such rights as they may have under the provisions of paragraph 5 of the restrictions. Plaintiffs were not so limited. All of the plat restrictions were in evidence for all purposes. We are not required to base our disposition of this matter entirely upon the meaning of the terms embraced in paragraph 5. However, we do note that in 26 C.J.S. Deeds § 165a., it is stated that "In a covenant prohibiting the use of property for business purposes, the word "business" includes any particular occupation or employment habitually engaged in for livelihood or gain."

Paragraph 1 of the restrictions, supra, restricts the lots and land in the addition against *use* for any commercial business, profession, or *any other purpose other than residential use*, and requires that the lots and land *must be used for private residential dwelling exclusively*.

The situation in the present case is similar to that in West Nichols Hills Presbyterian Church v. Folks, Okl., 276 P.2d 255. In that case the church sought to use the platted lot for free parking by those attending church services. The pertinent language in the restriction provided that "The following lots are restricted to residence only, * * *." In addition the dedication contained numerous uses for which all of the land could not be used, but none expressly prohibited the use of the lot for free parking by those attending church services. We held that the terms of the restrictions were clear and unambiguous and that the use of the land for "residence only" means that the lot shall be used for residences and for no other purpose, and that the recital of certain specific uses which were prohibited for the entire addition, but failing to specifically forbid parking for those attending a nearby church, did not nullify or in any way affect the clearly expressed intention of the dedicator that the lots involved in the controversy should be used for residence purposes only.

In Trotter v. Loum, Okl., 321 P.2d 651, the owner of a platted lot sought to construct a building thereon and use it for a dental clinic. The plat restrictions provided that "All lots in the addition should be known, described and used as residential lots." Under Restriction (F) it was additionally provided that "No noxious or offensive trade or activity shall be carried on upon any lot, nor shall anything be done thereon which may be an annoyance or nuisance to the neighborhood." It was contended, as is similarly urged in the present case, that under "(F)" the only business prohibited was business that would be noxious or offensive or an annoyance or nuisance to the neighborhood, and that a dental office did not fall within any of these terms, and an injunction against the construction of the dental clinic should have been denied. We affirmed the judgment awarding the injunction. We

held that the language "All lots in the addition should be known, described and used as residential lots" in the plat restrictions, restricted the use of lots in the addition solely to residential purposes, and that Restriction "(F)" could not be construed to nullify or abrogate the language of the restrictions which plainly restricted against use of the lots for any purpose other than residential.

■ The above cited cases are directly applicable to the present case and we adopt the reasoning and conclusions therein as clearly holding that the present restrictions prohibit the operation of a beauty parlor or salon within the addition.

Defendants also contend that the trial court erred in granting the injunction in the face of undisputed evidence showing a substantial change in the neighborhood.

In support of this contention the defendants rely upon the evidence that 50th Street was made a four-lane street and the speed limit was increased from 30 to 40 miles per hour, after the platting of the addition. Defendants also rely upon the presence of the church, filling station and shopping center, located in a different addition and north of 50th Street as above described. We point out that, as to these last described conditions, the evidence does not disclose when they came into existence, and it may be that they were present when the addition was platted.

■ In Tower v. Mudd Realty Company, Okl., 317 P.2d 753, we said that in order to be sufficient to warrant the release of property from the servitude of a restrictive covenant, the evidence of a change of conditions must establish that the original purpose and intent of the restrictions have been altered or destroyed by the changed conditions and cannot be accomplished by the enforcement of said restrictions.

■ The trial court made no finding relative to the proposition of change of condition in the neighborhood, but it is inherent in the judgment awarding the injunction that this question was determined against the defendants.

The judgment in this respect is not clearly contrary to the weight of the evidence.

■ Defendants further contend that the operation of the beauty shop in the manner disclosed by the evidence falls within the maxim "de minimis non curat lex."

Defendants cite Varner v. Aboussie, Okl., 397 P.2d 494, where we applied the above rule that "The law cares not for small things" in a case involving violation of a side lot building line restriction. In that case, in spite of the violation, the space between the residences was in fact 14 feet more than the covenants required. We said the variation was trifling and that plaintiff's complaint was apparently on aesthetic grounds.

The maxim is not applicable in the present case. Defendants had notice of the restrictive covenants, by the recorded instrument and by actual knowledge, that lots in the addition were restricted to private residential dwellings exclusively. In disregard of this notice they proceeded to expend their money in a project they knew or should have known was in violation of the restrictions. The present case is an example of an initial violation of a restrictive covenant which, if allowed to continue, would be an excuse or the basis for additional violations that would finally defeat the purpose of the restrictions and destroy the exclusive residential character of the addition.

This is an action of equitable cognizance and the decision of the trial court will not be reversed unless it is against the clear weight of the evidence. Trotter v. Loum, supra.

The judgment of the trial court is not against the clear weight of the evidence.

Affirmed.

BERRY, C. J., and WILLIAMS, BLACKBIRD, JACKSON, HODGES, LAVENDER and McINERNEY, JJ., concur.