WILLIAM L. SMITH, JR., & another *vs.* LOUIS JOSEPH HADAD & others.

Middlesex.    November 14, 1973. — December 27, 1973.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Real Property,* Boundary; Deed: property conveyed.

Under a deed of land whose description in part ran northeasterly "to" a
   State highway in which the Commonwealth had an easement but not
   the fee; thence southerly "by" the highway to a point; thence turning
   at a right angle to the highway and running westerly 175 feet; thence
   turning and running southerly "and parallel to" the highway and
   "distant" 175 feet "therefrom," the boundary running westerly 175
   feet from the highway should be held to begin, not at the center line of
   the highway, but at the west side line thereof, in the absence of
   anything to show a different intent of the parties to the deed. [638-
   641]

PETITION filed in the Land Court on August 18, 1970.

The case was heard by *Silverio, J.*

*William L. Smith* for the petitioners.

*Dunbar Holmes* for East Cambridge Savings Bank.

*William J. Lee,* for Louis Joseph Hadad & others.

*Geoffrey Bolton,* for The Massachusetts Conveyancers' Association, amicus curiae, submitted a brief.

HALE, C.J.    This is a petition under G. L. c. 185, as amended, to register and confirm title to land. The petitioners have appealed pursuant to G. L. c. 231, § 96, from a decision of the Land Court ordering the registration as applied for, excepting therefrom a strip of land 33 feet wide

to which both the petitioners and the respondents claim title. In addition to the appeal the petitioners have saved exceptions to an evidentiary ruling and to the denial of their requests for rulings of law. Those are before us on the petitioners' outline bill of exceptions. Appeals Court Rule 1:22. There was no error.

Title to the strip determines the westerly boundary of the respondents' lots on Main Street in Reading. The parties' respective chains of title, for the purposes of this decision, begin with one Martha H. Sanborn, who in 1946 conveyed approximately 14 acres of land, including the strip in question, to one Raymond E. Nichols. The boundaries of the property were described in the deed as follows: "Beginning at the most Southerly corner thereof at the junction of Short Street, and Mill Street; thence the line runs NORTH-ERLY and NORTHWESTERLY by said Mill Street to land of the Town of Reading; thence the line runs NORTHERLY with the wall by said Town's land to a corner of the wall; thence the line runs WESTERLY with the wall by said Town's land to the Ipswich River; thence the line runs NORTHEASTERLY in an irregular line, following the old course of said river to Main Street; thence the line runs SOUTHERLY by said Main Street, now a state highway to said Short Street; thence the line runs SOUTHWESTERLY by said Short Street to said Mill Street and the point of beginning. . . ."

In May, 1949, Nichols conveyed a portion of the above described premises to the petitioners' predecessor in title, one Gilbert W. Johnson. The boundaries of the portion so conveyed were identical to those described in the Sanborn-Nichols deed, except for the frontage on Main Street. The Nichols-Johnson deed described that boundary as follows: "[T]hence turning and running Southerly by Main Street to a point on Main Street distant eight hundred (800) feet North of the junction of Main and Short Streets; thence turning at a right angle to said Main Street and running Westerly one hundred seventy-five (175) feet; thence turning and running Southerly and parallel to Main Street *and distant one hundred seventy-five (175) feet therefrom,*

Smith *v.* Hadad.

eight hundred (800) feet more or less to said Short Street;[1]
thence turning and running Southwesterly by Short Street
to said Mill Street at the point of beginning . . ." (emphasis
supplied). The effect of that description was that Nichols
retained title to a parcel of land along the westerly side of
Main Street, 175 feet in width and extending 800 feet north
of the Short Street intersection. Nichols conveyed that
parcel to the respondents' common predecessor in title in
1959. The parcel was later subdivided.

The petitioners assert that the starting point of the 175
foot westerly measurement found in the deed to the
respondents' predecessor, and in the deeds to the respond-
ents, should be the center line of Main Street, as shown on
the accompanying sketch plan. The respondents contend
that the measurement should be from the side line of Main
Street. The starting point is the crux of the instant dispute.
As Main Street is 66 feet wide the effect of the petitioners'
claim would be to shift the westerly boundary of the
respondents' lots 33 feet to the east.[2] The petitioners argue
that, since it is well settled in this Commonwealth that a
conveyance of property bounded by a way ordinarily
conveys the fee to the center of the way (*Peck* v. *Denniston,*
121 Mass. 17 [1876]; *Brassard* v. *Flynn,* 352 Mass. 185, 188-
189 [1967]; see G. L. c. 183, § 58, inserted by St. 1971,
c. 684, § 1), it would be "inconsistent" to hold that
boundaries measured from a way are to be determined from
the side line thereof.

We fail to see how this case is distinguishable in any
material way from that of *Dodd* v. *Witt,* 139 Mass. 63
(1885), where the court considered the precise question
involved in this case: "A majority of the court is of opinion,
that it is a common method of measurement in the country,

---

[1] Because Short Street and Main Street intersect at an obtuse angle, that
distance is more than 950 feet. Nevertheless, the description was sufficient to
preserve Nichols' title to the retained parcel as far as Short Street. *Lemay* v.
*Furtado,* 182 Mass. 280 (1902). *Murphy* v. *Mart Realty of Brockton, Inc.* 348
Mass. 675, 680 (1965).

[2] The Commonwealth's rights in Main Street (now Route 28) are by way of
easement, rather than in fee.

Smith *v.* Hadad.

where the boundary is a stream or way, to measure *from the bank* of the stream or the *side of the way;* and that there is a reasonable presumption that the measurements were made in this way, unless something appears affirmatively in the deed to show that they began at the centre line of the stream or way" (emphasis supplied). *Id.* at 65-66. We note that the *Dodd* case was decided after that of *Peck* v. *Denniston, supra,* and that the *Dodd* case expressly confirmed the *Peck* rule of construction.

There was evidence in the *Dodd* case that the parties to the deed in question had subsequently erected monuments in such a manner as to rebut the above stated presumption, so the case was remanded for a new trial. The record here is devoid of any rebuttal evidence; instead, the petitioners attempt to distinguish the *Dodd* case on the ground that evidence that measurements were actually made must be introduced before the *Dodd* presumption can be invoked. We find this argument unpersuasive.

Our opinion is that *Dodd* v. *Witt, supra,* controls this case. We find nothing "inconsistent" in continuing to follow the *Dodd* rule of construction.[3] Such is the law in this Commonwealth, and it appears to be well understood by conveyancers. To hold otherwise would be to create considerable turmoil and cause substantial financial hardship to many landowners.

The exceptions do not raise any question which has not already been disposed of by the foregoing, and therefore we need not consider them.

*Exceptions overruled.*
*Decision affirmed.*

---

[3] An analogy to the *Dodd* rule is the construction adopted in *Tobey* v. *Moore,* 130 Mass. 448, 451 (1881): "The restriction against building 'within eight feet of said streets' named in the deed has reference to the line of each street as existing at the date of the deed. . . ." See also *Attorney Gen.* v. *Algonquin Club,* 153 Mass. 447, 448-449 (1891).